## Kingman & Company v. Frank Glover.

1. MORTGAGE—*What Not a Release of.*—Property which is omitted from a new mortgage given to secure an old debt is not thereby released from a prior mortgage given to secure the same debt unless some valid understanding to that effect is had.

Replevin.—Appeal from the Circuit Court of Moultrie County; the Hon. ISAAC HUDSON, Judge, presiding. · Heard in this court at the May term, 1896. Reversed and remanded. Opinion filed November 21, 1896.

MILLS BROTHERS, attorneys for appellants.

W. G. COCHRAN, attorney for appellee.

Mr. Justice Wall delivered the opinion of the Court.

This was replevin for two horses. On a trial in the County Court before the judge thereof, a jury being waived, the issues were found for defendant, and a writ of *retorno* was awarded, from which judgment the plaintiff has appealed. In July, 1891, the plaintiff sold to one Snyder and N. A. Glover, the wife of defendant, a threshing outfit and received in payment the notes of said Snyder and N. A. Glover secured by a chattel mortgage on the property sold and the property in dispute which belonged to the defendant, who was doing business in his wife's name. The mortgage was executed by Snyder, alone, but with the consent of defendant, and was recorded in Moultrie county, where Snyder and the Glovers resided and where the property was. During the latter part of the season Snyder and defendant undertook to ship the threshing machine to the State of Minnesota, but the plaintiff would not permit the property to go out of this State until a mortgage was executed in Minnesota.

Snyder had gone there, and defendant, being in Peoria, where the machine had been stopped and where the plaintiff's home office was located, arranged with plaintiff that a new mortgage should be executed by Snyder, in Minnesota, and then the machine should be forwarded.

Accordingly a new mortgage covering the same property as the first was prepared and sent to Snyder, who executed and returned it, and then the threshing machine was shipped to him.

The horses always remained in the custody of defendant in Moultrie county. It was the defense, that by force of this arrangement between defendant and plaintiff the horses were released. It very clearly appears that they were included in the new mortgage. It also appears that the defendant saw the new mortgage and according to the testimony of Jameson, the agent of plaintiff, it was given to defendant to send to Snyder. Defendant says it was understood the horses were not to be put in it, and that it was to be in satisfaction and release of the first mortgage.

He admits that he saw the new mortgage, but thinks the horses were not included therein; they were, however, and he must have known it; and this fact, together with the positive testimony of Jameson that the new mortgage was to cover all the property in the first, very clearly outweighs the testimony of defendant. If the horses were not put in the new mortgage, they would not be released from the lien of the first unless some valid understanding was had to that effect. It is difficult to see why the plaintiff should have consented to such an arrangement or what consideration there was in the transaction moving to plaintiff for such consent. The plaintiff did not wish the machine taken out of the State, and had nothing to gain by the removal. It was the defendant and Snyder who wished it, and merely for their accommodation was it permitted, on the condition that a new mortgage, valid in Minnesota, should be given. Why should the plaintiff, under such circumstances, also release the lien upon the horses ? It was not necessary to do so in order to accomplish the desire of Snyder and defendant in reference to the machine, nor did any benefit move to the plaintiff or any disadvantage to defendant which might operate as a consideration for a release. There was no formal release, and the circumstances unquestionably indicate there was no intention on either side that the transaction should effect a release, nor was there any consideration therefor.

We are constrained to hold that the judgment is erroneous. It will therefore be reversed and the cause remanded.