COMMERCE TRUST COMPANY, Respondent, v. L. M. WHITE et al., J. F. BURKHARDT, Appellant.

Kansas City Court of Appeals, June 30, 1913.

1. PRACTICE: Suit at Law or in Equity. Plaintiff's petition was in two counts, the first against certain defendants on a promissory note, the second against those same defendants and one Burkhardt to foreclose a mortgage given to secure the said note on property which Burkhardt had bought of the other defendants subject to said mortgage. The allegations

of the second count made it one in equity but if they did not, the answer of defendant Burkhardt transformed it into an equity suit.

.2. ————: ————: **Right to Jury: Verdict on all Issues.** There was no answer filed to the first count and no defense made.   Only defendant Burkhardt contested the suit.   His defense on its face showed he was in no position to dispute the indebtedness.   In fact by his defense to the foreclosure count he admitted the existence of the indebtedness against the other defendants, but contested only the validity of the mortgage on the property he had bought.   At his request the court called to its aid a jury on the issues raised by the second count. The plaintiff made a prima facie case.   The burden was on defendant and he failed to offer any evidence.   Under the instruction of the court the jury found the issues on the second count for plaintiff.   *Held*, that this was proper, and that it was not necessary for the jury to pass on the amount of the indebtedness due under the first count because that was a separate issue, and if controverted, to be separately tried; but that defendant was not entitled to a jury on that issue since he did not controvert it, and if he had, his whole interest in that issue had been adjudicated and determined, and therefore, the court did right in afterward rendering judgment on the note against the signers thereof, and then rendering judgment of foreclosure of the mortgage.

3. ————: ————: **Written Issues to Jury.** In the trial of an equity suit, where a jury is used, the written issues submitted to the jury should contain merely the issues and not all the necessary information to enable the jury to decide those issues. The court's instructions are for that purpose, and if defendant desired the jury to be more fully instructed he should have prepared and submitted them.

4. ————: **Chattel Mortgage: Defense That Property Has Been Released.   Peremptory Instruction.** Where, in a suit to foreclose a chattel mortgage, the defense is that other property was substituted as security in the place of the property mortgaged, and there is nothing in the documents to show such substitution, release, or agreement to release, and plaintiff shows that the conditions under which the substitution and release were to be made was never performed and said substitution and release was therefore never made, and defendant offers no evidence to the contrary, and there is none in plaintiff's evidence, a peremptory instruction to find for plaintiff is proper.

5. ————: **Deeds: Delivery in Escrow: Effect of Delivery of Deed as an Escrow to Grantee.** In law a delivery of a deed to the grantee or his agent completes the transaction even

Trust Co. v. White.

though it was intended to be merely in escrow. But such is
not the rule in equity. Even in law, the identity of an agent
with that of a corporation principal is not sufficient to change
a deed delivered as an escrow to the agent into a completed
deed to the grantee. In this case, however, even if the delivery
to the agent destroyed the escrow feature and completed the
instrument as a deed it merely passed the title and did not
have the effect, either in law or equity, of releasing the mort-
gaged property, since the condition on which it was to be
released was never performed.

Appeal from Jackson Circuit Court.—*Hon. O. A.
Lucas,* Judge.

AFFIRMED.

*C. H. Nearing* for appellant.

(1)  This is a suit at law, and the appellant is en-
titled to a jury to determine all the issues as to all the
parties. Harrison v. Doyle, 147 S. W. 504; State ex
rel. v. Evans, 176 Mo. 314; Fithian v. Monk, 43 Mo.
517; Riley v. McCord, 24 Mo. 265. (2) That this is a
case at law in which the defendant is entitled to a jury
has been determined so many times that it is not an
open question. Harrison v. Doyle, 147 S. W. 504; State
ex rel. Evans, 176 Mo. 314; Fithian v. Monk, 43 Mo.
517; Riley v. McCord, 24 Mo. 265. (3) The court erred
in not submitting all the issues raised by the plead-
ing to the jury. Hickman v. Boyd, 1 Mo. 495; Fen-
wick v. Logan, 1 Mo. 402; Daily v. Columbus, 122 Mo.
App. 22. (4) No final judgment disposing of this
case as to all the parties would be entered on the ver-
dict of the jury upon either counts, and the court
erred in accepting the verdict. Crow v. Crow, 124 Mo.
App. 120. (5) A conveyance cannot be delivered to
the grantee or its agent in escrow. When it is so de-
livered it is an absolute conveyance in accordance with
its terms, freed from any condition or understanding
between the parties and when Kemper testified that
the deed was to be held by the respondent in escrow,

it bcomes an absolute conveyance to the respondent. Devlin on Deeds (3 Ed.), sec. 314; Jones v. Shaw, 29 Mo. 310; Marsmean v. Holscher, 49 Mo. 88; Parsons v. Parsons, 45 Mo. 265; 13 Cyc. 572; Block v. Shieve, 13 N. J. Eq. 458; Railroad v. Cliff, 13 Ohio St. 246; McCann v. Atheston, 106 Ill. 31; Devlin on Deeds, ch. 314. (6) The delivery to the agent or attorney for grantee has the same effect. Devlin on Deeds (3 Ed.), sec. 316; Duncan v. Page, 47 Ga. 445. (7) That was not authorized by the verdict; the court adopted the theory that the second count stated a cause in equity ignoring the case at law in the first count, and overlooking the fact that judgment was only asked against defendants other than appellant in the first count and by a verdict of the jury. Crane v. Peters, 63 Mo. 429; McHoney v. Ms. Co., 44 Mo. App. 426; Kabrach v. Mo. Co., 48 Mo. App. 393; Sheres v. Hill, 125 Mo. App. 383; Crow v. Crow, 124 Mo. App. 120; Booth v. Loy, 83 Mo. App. 601.

*Robinson & Robinson* for respondent.

TRIMBLE, J.—On January 6, 1911, the defendants L. M. White, C. H. White, and K. P. Jones executed and delivered to the Commerce Trust Company their joint promissory note for $3300 due six months after date and bearing eight per cent compound interest per annum from date until paid. This note was secured by a chattel mortgage executed by L. M. White on a livery stock, and the chattel mortgage was duly recorded.

Thereafter, the defendant, J. F. Burkhardt (who is the only one who appeals) acquired the livery stock subject to the chattel mortgage.

The note became due and, as it was not paid, suit was brought against the makers of the note and J. F. Burkhardt. The petition is in two counts, the first being a plain suit on the note against the signers there-

of, the second being a count alleging the note and chattel mortgage, that Burkhardt acquired and has taken possession of said livery stock, subject to said mortgage, and, although having promised to pay said note, has failed to do so and is now claiming that plaintiff has no lien on said stock, nor right to foreclose the chattel mortgage; that said stock is of a perishable nature and liable to depreciate, and that said Burkhardt is disposing, and has disposed of a portion of same; that a judgment has been rendered against Burkhardt and an execution is about to be levied on the property, and the same is liable to be wasted, dissipated and plaintiff's security lost; that defendant Burkhardt is insolvent and plaintiff has no adequate remedy at law; wherefore a receiver is asked to be appointed to take charge of the property, and handle same under the directions of the court and that plaintiff's lien be foreclosed, etc.

The signers of the note filed no answer and made no defense. But defendant Burkhardt answered in which he denied generally every allegation in the petition contained and then set up that the chattel mortgage was void because L. M. White had no interest in the livery stock at the time the chattel mortgage was executed and could convey no interest therein. He further set up that an agreement had been entered into between plaintiff and himself whereby plaintiff was to accept from Burkhardt certain real estate in Nebraska as security for the above indebtedness in the place of said livery stock, and the latter was to be thereupon released; that the security of the Nebraska real estate was to be given by defendant Burkhardt executing to plaintiff a warranty deed to said real estate and receiving back a contract agreeing to reconvey said real estate to defendant upon payment of the amount of said indebtedness within six months thereafter; that said deed was executed and delivered to plaintiff's president, William T. Kemper, for and on behalf of

plaintiff ,and that he, in plaintiff's behalf, executed and delivered to defendant the contract to reconvey said premises to him when he should pay said indebtedness; that said deed had been accepted and recorded, and said real estate was now security for the indebtedness in place of the livery stock; that the substitution of the Nebraska real estate for the livery stock as security was the only consideration for him, Burkhardt, to execute said deed; wherefore, there was no further lien on said livery stock.

To this answer, the plaintiff filed reply denying generally everything in the answer not specifically admitted, and then setting up that L. M. White, at the time of executing the chattel mortgage, had a right to execute the same; that Burkhardt, at the time he acquired the livery stock, knew of said chattel mortgage, took said stock subject thereto, and by promises to pay the indebtedness secured thereby has induced plaintiff to postpone foreclosure thereof, and is estopped to deny the validity of the same. It was further alleged in the reply that plaintiff never agreed to release the livery stock and accept the Nebraska real estate as security in lieu thereof. But that it was expressly stated to Burkhardt that plaintiff would do so only on condition that the makers of the note would consent thereto, and upon the further condition that the Nebraska property should, on examination, be found to be of the character and in the condition he had represented it to be; and that said property, on investigation, proved not to be as represented in a number of particulars, not only as to character, worth and condition, but also as to title, and that Burkhardt was fully informed of this; that afterwards Burkhardt, through fraud and deceit, induced an employee of plaintiff, who was not conversant with the negotiations concerning the conditions on which the exchange of securities was to be made, to record the deed signed by Burkhardt and left with the employee and which pur-

ported to convey the Nebraska property to Kemper; that as soon as the fact was ascertained plaintiff caused said Kemper to, and he accordingly did, tender to Burkhardt a deed reconveying the Nebraska property to him.

On October 17, 1911, the court appointed John T. Wayland receiver who qualified and took possession of the livery property, and Burkhardt was restrained from selling or disposing of it.

Upon the trial of the case, defendant Burkhardt demanded a jury, and the court, although deeming it an equity case, concluded to grant the request and take the advice of a jury upon the issues of fact involved.

As stated before, the makers of the note made no defense. There was, therefore, no issue raised over the cause of action stated in the first count of the petition, to-wit, the suit on the note. The answer filed by Burkhardt was in reality as answer merely to the second count and ignored the first count. But even if Burkhardt's answer can be stretched to cover this first count because it contains the words "deny each and every allegation in said petition contained" still this would not be sufficient to raise a triable issue over the note if the pleadings subsequent to the petition showed on their face that Burkhardt was in no position to deny the validity of the note, and this they did. But, even if they did not, the determination of the issues raised by the second count and the pleadings filed to it would inevitably determine the issue of the validity of the note *as to Burkhardt*. So that, as hereinbefore stated, there was no reason or necessity for litigating any question raised by the first count. The whole dispute, so far as Burkhardt (or any one else for that matter) was concerned, centered around the issues raised by the second count, namely, the validity of the mortgage and whether or not the livery stock had been released. Hence the court did not err in not.

having a separate jury trial as to the note, or in rendering judgment against the parties on the note after the verdict was returned by the jury on the second count. The cases cited by appellant were where there was an issue raised as to the note as well as to the foreclosure count.

It is contended by the defendant Burkhardt that the entire suit is one at law, the first count being a mere suit on a note, and the second to foreclose a mortgage securing it, and that defendant, having demanded a jury, was entitled to have one and to have it pass on all the issues involved, the note as well as the foreclosure matter. But, while the count on the note was a suit at law, there was no issue raised as to it. And defendant is mistaken in thinking that the second count is one at law. It and the pleadings filed to it made the second count one in equity. If the allegations of the second count did not make it one in equity certainly the allegations of the answer and of the reply thereto did. However, it is unnecessary to dwell further on this point since this court has already held that the second count was one in equity. [Commerce Trust Co. v. White et al., 154 S. W. 864.]

Complaint is next made that the issues submitted to the jury were not broad enough to cover the issues raised by the pleadings under the second count. Broadly speaking there were but two issues: first, was the chattel mortgage valid, second, was the livery stock subject to or released from the lien thereof? These two issues were submitted. If defendant wished the jury told just what facts they were required to find in order to decide said issues either way, he should have submitted instructions to be given the jury, but he did not do so. The two issues submitted for the determination of the jury were all of the issues involved, but did not contain a statement of the facts necessary to be found in order to properly decide those issues. It is the province of instructions to tell the

jury what facts are necessary to be found in order to decide an issue submitted, and not for the written issue to do so. For instance, the written issue submitted to the jury in a will contest case is whether or not the writing is the will of the deceased. The instructions, however, tell the jury the facts they are to find in order to determine whether it be a will or not.

Upon the question of whether the chattel mortgage was valid as to Burkhardt, the undisputed evidence was such as to estop Burkhardt from denying its validity. In fact, by insisting that the Nebraska property had been substituted for the livery stock as security for the chattel mortgage in order that the livery stock might be released, Burkhardt admitted the validity of the chattel mortgage but was claiming that the property therein had been released. So that, on that issue, there was no question of fact to be passed on by the jury, and the court very properly directed the jury to return a verdict for plaintiff on that issue.

Upon the question whether the Nebraska land had been by agreement substituted for the livery stock thereby entitling the livery stock to be released, the evidence was all one way. In the first place, the livery stock, so far as the records and documentary evidence showed, was not released. Prima facie ,therefore, the livery stock was still subject to the chattel mortgage. The burden was on defendant Burkhardt to show that in equity it was free from the mortgage. All the evidence, however, was to the effect that the proposed substitution of the Nebraska land for and in lieu of the livery stock as security was never in fact consummated; that it was not to be done unless the makers of the note consented to it, and unless the property was in every way as represented, and that none of these conditions were performed; that instruments were drawn up by which the Nebraska property was deeded by Burkhardt to Kemper for plain-

tiff and Kemper gave back a written agreement to re-
convey to Burkhardt whenever the note in question
was paid.  These papers were left with an agent of
Kemper's to be held by him until the consent of the
makers of the note could be obtained, and until the
character, value and title of the Nebraska property
could be investigated.  But·they were not to become ef-
fective nor be delivered and accepted until these con-
ditions were met; and the agent, not understanding
the facts, inadvertently had them recorded as if they
had been finally delivered and accepted; and he had no
authority to accept delivery of them or to place them
on record.  These instruments concerning the Nebras-
ka land *said nothing about the release of the livery
stock.* · There was no release, or agreement to release,
the livery stock, in writing, at all.  And all the testi-
mony showed, without contradiction, that no release
of the livery stock had been made.  Defendant Burk-
hardt offered no testimony whatever.  The livery stock
being described in the chattel mortgage and it being
still in force and there being no writing or other evi-
dence to show it's release, the burden was on Burk-
hardt to show its release, and as he did nothing what-
ever to maintain that burden in any way, plaintiff was
entitled to a peremptory instruction to the jury in its
favor on the second issue.

But defendant contends that inasmuch as plain-
tiff's evidence shows that the two instruments con-
cerning the Nebraska land were left in escrow with
Kemper's agent this constituted a complete delivery
and taking effect of the deed regardless of what may
have been the intention of the parties.  This is on the
theory that a deed, when delivered to the *grantee,*
ceases to operate as an escrow and becomes an opera-
tive deed free from any condition of the escrow not
expressed in the deed itself.  [1 Devlin on Deeds (3
Ed.), sec. 314.]  But even if this is true, and ordi-
narily it is (but not in this case), the deed in such

case would operate to pass the title, but that would be all. The mere passing of the title as a legal proposition would not operate to release the livery stock from the lien of the chattel mortgage. That was not to be done until the consent of the makers of the note had been obtained and the character, value and title of the property had been examined. There was no statement in the deed that the mere conveyance of the title to Kemper should operate to release the livery stock. So far as the two instruments showed, the two constituted a separate and independent mortgage of the Nebraska property to secure the note in question, and did not obligate the plaintiff to release the livery stock at all. Hence, until the conditions under which it was agreed to release the livery stock were complied with, the plaintiff was under no obligation in law or equity to release the stock.

Besides, it must be remembered that the rule in reference to the delivery of a deed in escrow to the grantee or his agent is a rule at law, and not one in equity. As said by Justice STORY in Flagg v. Mann, 2 Sum. 510, ''Though there is a technical difficulty in the suggestion of the delivery of the deed to the grantee as an escrow, yet a court of equity will not govern itself exclusively by technical principles of law where the intention of the parties will be thereby defeated.'' Again, the rule in reference to a deed delivered as an escrow to the grantee is not applicable to this case, because the deed was in reality to the plaintiff, though made to Kemper for it. There is not such a personal identity between a corporation and its officers, that a deed may not be placed in the hands of the latter, as an escrow until the performance of the condition upon which it is to be delivered and become operative. [Southern Life Ins. Co. v. Cole, 4 Fla. 359, 1. c. 274; 1 Devlin on Deeds (3 Ed.), sec. 316, p. 558.]

The final complaints made are that the judgment is not responsive to the issues, and that the court erred in admitting evidence of certain record entries in the case and of the note sued on after the verdict of the jury was returned. But the trouble with the first objection is that it assumes the defendant Burkhardt asked and had a right to ask a trial by jury on the issue presented by the first count, which he did not as we have seen; there was no issue raised over that count, and, if there had been, Burkhardt was estopped from disputing the note so far as it affected him. The second objection misconceives the action of the trial court. There is nothing improper in joining a count at law on the note with a count in equity for foreclosure. [R. S. Mo. 1909, sec. 1795.] But the causes of action must be separately stated and separately tried. [McHoney v. German Ins. Co., 44 Mo. App. 426.] That is precisely what was done in this case. There was no issue raised over the note in the first count. The only issues in dispute were those raised by the second count. These were tried and a verdict received as to them, and then the court adopted the finding of the jury and rendered judgment on the note against the makers thereof and then rendered judgment of foreclosure as to the livery stock against Burkhardt. The two judgments were as separate and distinct as to the respective parties, and as to the costs due from each, as they could possibly be made. The fact that they were not rendered in two separate and distinct journal entries on the record makes no difference. In fact, when there are different counts united in the same petition, the judgment on the first count tried is merely interlocutory and cannot be made final until there is a finding or verdict on all the counts when a final judgment is rendered on the whole case on all the counts. [Boothe v. Loy, 83 Mo. App. 601, l. c. 606.] This is necessarily so because there can be but one final judgment in a case. [*Ibid;* R. S. Mo. 1909, sec. 1971.] The

above procedure is precisely that followed by the court in this case. The objection made to what was done is founded on the erroneous view that there was an issue raised over, or jury demanded in the trial of, the first count. Burkhardt alone, of all the defendants, is com- . plaining and he is concerned only with the issues involved in the second count. That was a suit in equity, and the court was not required to call a jury but did so, and when it appeared, as a matter of law and equity that he was not entitled to a judgment on that. count, the court rendered a final judgment covering both counts and keeping the respective rights of the parties defendant separate as to each count as though they were distinct suits. The judgment is affirmed. All concur.