## CAMERON v. CARSON. (No. 2019.)

(Court of Civil Appeals of Texas. Amarillo. March 7, 1923. Rehearing Denied April 4, 1923.)

**1. Chattel mortgages ⊕⇒243 — Subsequent mortgage executed to same party covering part of same property held not to release prior mortgages.**

Where chattel mortgages on the wheat to be planted and growing on 520 acres of land were executed, and subsequently another mortgage was given by the same mortgagor to the same mortgagee covering only the 400 acres which had in fact been planted, and volunteer wheat came up on 120 acres of the entire tract, the execution of the last mortgage did not of itself release the prior mortgages, which in fact covered the volunteer wheat.

**2. Chattel mortgages ⊕⇒243—Burden of proof of release of chattel mortgage by subsequent mortgage held to be on party relying thereon.**

Where a chattel mortgage is made between the same parties covering the same indebtedness, but on part only of the same property as previous mortgages, if it was the intention of the parties to release the previous mortgages by the execution of the subsequent mortgage, the burden of proving such fact was upon the party claiming under that mortgage.

**3. Chattel mortgages ⊕⇒174(2)—Evidence of intent to release prior mortgage by execution of subsequent mortgage held admissible.**

Where, in an action for conversion of certain volunteer wheat grown on 120 acres of land alleged to be covered by chattel mortgages on the growing crop of 520 acres, the issue arose as to whether the mortgage was released by a subsequent mortgage between the same parties, covering a renewal of the indebtedness, but reciting an acreage of 400 only, omitting the 120 acres of volunteer wheat, evidence as to the intention in executing the subsequent note and mortgage was admissible.

Appeal from District Court, Hansford County; W. R. Ewing, Judge.

Action by C. W. Carson, Jr., against I. E. Cameron. Judgment for plaintiff, and defendant appeals. Affirmed.

John L. Gleason, of Wichita, Kan., and Tatum & Strong, of Dalhart, for appellant.

Hoover, Hoover & Willis, of Canadian, for appellee.

BOYCE, J. This suit was brought by C. W. Carson, Jr., against I. E. Cameron, for conversion of 531 bushels of wheat. The appeal is from a judgment rendered for plaintiff on verdict returned on peremptory instructions from the court.

Both parties claim right to the wheat under mortgages executed by T. L. & Frank Hobbs. Plaintiff's mortgages are prior in point of time, but appellant contends that the peremptory instruction should not have been given for three reasons: (1) The evidence is sufficient to raise an issue of fact as to whether plaintiff's mortgages covered the wheat in controversy; (2) the evidence is sufficient to raise an issue as to whether defendant had notice of plaintiff's mortgage; (3) the plaintiff's mortgages do not sufficiently describe the mortgaged property to identify it.

The wheat in controversy was harvested by the mortgagors, the Hobbses, from 120 acres of volunteer wheat on a farm of 520 acres leased by them. The mortgagors had this farm of 520 acres under lease with agreement to put it all in wheat. On October 6, 1919, before any of the wheat was planted, they executed the first mortgage to E. J. Thayer to secure payment of a large amount of indebtedness to Thayer, evidenced by their notes described in the mortgage. This mortgage describes the wheat crop mortgaged as follows:

"An undivided one-half interest in 320 acres of wheat now growing or to be planted, and an

undivided one-fourth interest in 200 acres of wheat now growing or to be planted on the Arnold place, owned by Jim Shields, one-half mile south of Guymon, Okl., in Texas county, Okl."

The mortgagee had some doubt as to whether a mortgage on an unplanted crop was valid, and it was agreed that, when Hobbs finished planting, he would furnish the mortgagee with a correct statement of the acreage in wheat; it being contemplated that another mortgage would then be executed to cover the actual acreage. On November 21, 1919, the Hobbses executed the second mortgage to Thayer, which contained the same description as that in the mortgage of October 6th, except it mortgages their interest in 320 acres and 200 acres of "growing wheat"; the words "or to be planted" of the mortgage of October 6th being left out, though Hobbs testified that he had not then finished planting. With this difference the two mortgages are identical, the same property being mortgaged and the same indebtedness secured. Both mortgages provided that they should secure all renewals and extensions of the debt, "for which this mortgage is and shall be a continuing security until paid." On 120 acres of the 520 acres of this land described in these two mortgages, volunteer wheat came up and was growing on November 21st, though Hobbs testified that he could not tell at that time whether it would amount to anything. Hobbs planted all the 520 acres except the 120 acres just mentioned, and the wheat in controversy was harvested from this 120 acres of volunteer wheat. Some time after the execution of the mortgage of November 21st, the plaintiff, Carson, acquired the Hobbs notes from Thayer and on March 15th, the Hobbses executed renewal notes payable to Carson and the third mortgage. At this time one of the Hobbses informed Carson that they did not get to put in all the acreage and they had planted only 400 acres in wheat. This mortgage described the crop mortgaged as follows:

"One-half interest in 200 acres and one-fourth interest in 200 acres of wheat growing on the Arnold place, owned by Jim Shields, in Texas county, Okl."

This mortgage covered live stock not included in the other mortgage.

[1, 2] We think it evidence that it was intended by the first two mortgages to mortgage all the wheat crop to be grown on the 520 acres of land. The volunteer wheat was growing at the time of the mortgage of November 21st, and was covered by the terms of the mortgage of that date. The execution of the mortgage of March 15th did not, of itself, release the other two mortgages. American Type Foundry Co. v. Teague Bank (Tex. Civ. App.) 156 S. W. 300; Adams Co.

v. Johnson, 51 Tex. Civ. App. 583, 113 S. W. 176; Mayers v. McNeese (Tex. Civ. App.) 71 S. W. 68; C. J. vol. 11, pp. 683, 684. If it was the intention of the parties to release the first two mortgages by the execution of the mortgage of March 15th, the burden of proof of that fact was on the defendants. Adams Co. v. Johnson, 51 Tex. Civ. App. 583, 113 S. W. 176; Challis v. German National Bank, 56 Ark. 88, 19 S. W. 115; Commerce Trust Co. v. White, 172 Mo. App. 537, 158 S. W. 457; 11 C. J. 685.

[3] Plaintiff testified that he had no intention of releasing any lien secured by the first two mortgages in the acceptance of the last mortgage. Testimony as to the intention in executing the new mortgage and note was admissible (Mayers v. McNeese [Tex. Civ. App.] 71 S. W. 68), and is not contradicted, unless the circumstances of the execution of the mortgage of March 15th is such contradiction. It has been said that—

"Property which is omitted from the new mortgage is not released from a prior mortgage given to secure the same debt in the absence of an understanding that it shall have that effect." 11 C. J. 684; Kingman v. Glover, 67 Ill. App. 481.

The record repudiates the existence of any intention to release any part of the wheat crop from the prior mortgages. The failure to include the 120 acres in the last mortgage was due to misinformation on the part of the mortgagor as to the true facts. Plaintiff testified, and is corroborated by defendant's witness Hobbs, that the mortgage of March 15th was drawn on information from Hobbs as to the acreage in wheat; that Hobbs did not mention the volunteer wheat, and the mortgagee knew nothing of it. Even if plaintiff had, under the circumstances, released all the acreage except the 400 acres included in the last mortgage, he would probably be entitled to have the release set aside. Ross v. Strahorn-Evans Commission Co., 18 Tex. Civ. App. 698, 46 S. W. 398.

The mortgages were duly registered, and, besides, the defendant, at the time he acquired his mortgage on the wheat, had actual notice of the mortgages, "whatever they contained." He does not plead lack of notice, and does not allege or show any facts that would put him in a better position than the mortgagor in the assertion of his claim to the wheat.

The evidence shows that one quarter of the section was known as the "Ondler quarter or place," and the description of the land as the "Arnold place" was to this extent erroneous. Other parts of the description are sufficient to and do identify the land, and defendant does not claim that he was misled by any misdescription. If there was anything in the contention that the first mortgage was void because it does not state any time for planting of the crop to be covered

thereby, this would be immaterial, because the two later mortgages cover a definite crop of wheat then growing.

Affirmed.