David DONNELLY, Administrator with the Will Annexed of the Estate of Bessie Irene Egan, Deceased, and Ione Scott, Plaintiffs-Respondents,

v.

Horace T. ROBINSON, Administrator of the Estate of James Egan, Deceased et al., Defendants-Respondents,

Melford Egan and Alberta Egan, Intervenors-Appellants.

No. 51533.

Supreme Court of Missouri, Division No. 1.

Oct. 10, 1966.

Cohn & Lentz, Waynesville, by Mr. Arthur B. Cohn, for intervenors-appellants.

Francis A. Casserly, Paul S. Brown, St. Louis, Claude T. Wood, Richland, Donnelly & Donnelly, David Donnelly, Lebanon, for respondents.

JOHN J. WOLFE, Special Judge.

This is an action for a declaratory judgment brought by the administrator of the estate of Bessie Irene Egan, deceased, to determine the right of her estate to $15,250. This amount was one-half of a sum paid by the Missouri State Highway Commission for land in which Bessie Egan and her husband, James Egan, held a life estate. The administrator of the estate of James Egan, also deceased, was named as

defendant together with certain known and unknown heirs. Melford and Alberta Egan, his wife, intervened in the action asserting a right to the $15,250. The court found against the intervenors and held that the sum in dispute belonged to the estates of Bessie Irene Egan and James Egan. The intervenors prosecute this appeal.

Bessie and James Egan died simultaneously in an automobile accident on October 25, 1960. Bessie left a will which was probated and David Donnelly was appointed administrator of her estate. James Egan died intestate and Horace T. Robinson was appointed administrator of his estate.

Early in 1960 there was pending in the Circuit Court of Pulaski County, Missouri, a suit in which James and Bessie Egan were the plaintiffs and Melford and Alberta Egan, the intervenors here, were the defendants. That suit concerned title to the land later acquired by the Missouri State Highway Commission and here involved. It was settled by an agreement between the parties. A stipulation was filed and a judgment entered in accordance with the stipulation. The judgment provided that James Egan and Bessie Egan, his wife, had an estate for and during their natural life and for and during the natural life of the survivor of them with the remainder in fee to Melford Egan, intervenor here, upon the death of the survivor. The judgment also carried another provision contained in the stipulation which stated:

"* * * Provided, however, that in the event said real property and improvements described above should be acquired for public use by condemnation under the right of eminent domain, or in the event that said life tenants and the remainderman should voluntarily agree to the sale of said real property and improvements and should sell the same during the lifetime of the said James Egan and Bessie Egan, his wife, or the survivor of them, one-half of the net proceeds of the sale of said property shall be paid to defendant Melford Egan and one-half of said

net proceeds shall be paid to James Egan and Bessie Egan, his wife, or the survivor of them, and the amounts so paid to said remainderman and to said life tenants shall be their property absolutely."

The judgment also provided that deeds and documents necessary to effectuate it should be executed and exchanged between the parties. This was done and a life estate was deeded to James Egan and Bessie Egan by Melford Egan and Alberta Egan, his wife. The deed contained the same provision as the judgment in relation to the division of money received for the property if it was taken by eminent domain or voluntarily sold for highway purposes.

On October 4, 1960, the Right-of-Way Agent approached James and Bessie Egan and Melford and Alberta Egan about purchasing the land to which title had been adjudged as above stated. On October 5, an agreement having been reached, a deed conveying the land to the State Highway Commission for the sum of $30,500 was signed and acknowledged by all four of the Egans. It was at their request left with the Wayne County Bank to be held in escrow by the bank until the check for the purchase price was received from the State Highway Commission. The check went through the usual processing of the Highway Commission and was paid on November 29, 1960. After the signing of the deed and turning it over to the bank James and Bessie Egan suffered the fatal automobile accident mentioned. As stated, that occurred on October 25, slightly over a month before the check for $30,500 was paid.

The sum paid by the Highway Department was divided between the parties, by the administrators of the estates of the two decedents taking half ($15,250) and Melford and Alberta Egan, intervenors here, taking a like sum.

This suit followed to determine the rights of the parties to the amount paid to the administrators of the estates of James Egan and his wife Bessie Egan. Intervenors Melford and Alberta Egan claimed that the whole amount paid by the state belonged to them. They contended that the sale was not made prior to the death of the life tenants because the payment was not made by the state prior to their deaths. They maintained that they were the owners in fee at the time the sale was made and seek the $15,250 paid to the administrators. The court found the facts to be substantially as stated here and held that the $15,250 paid to the administrators properly belonged to the two estates.

■ In pressing their claim for the one-half of the purchase price paid to the administrators of the life tenants' estates the appellants intervenors first assert that title had not passed to the State of Missouri at the time of James and Bessie Egan's deaths because there was no delivery of the deed to the State of Missouri. Among other cases relating to delivery the appellants cite Klatt v. Wolff, Mo., 173 S.W.2d 933, in which this court restated the established rule that a deed to be operative as a transfer of ownership of land, must be delivered to the grantee or someone for him. In Harrison v. Edmonston, Mo., 248 S.W. 586, also cited, this court restated the necessity of delivery of a deed with the intention to part with control over it, in order to pass title.

The respondents do not question these rules but they rely, as the trial court did, upon the effect of the delivery of the fully executed deed dated October 5, 1966, to the Wayne County Bank. The bank was to deliver this deed to the Missouri Highway Department upon payment of the purchase price. The purchase money was paid; the deed delivered and the respondents contend that the trial court properly held that the date of the concluded transaction related back to the date of the deed and its delivery to the bank. After so holding the court logically divided the sum paid for the property in accordance with the interests of the grantors existing at the time of the execution and delivery to the bank.

The court invoked the rule that upon final delivery by a depository of a deed deposited in escrow the instrument will be treated as relating back to, and taking effect at the time of the original deposit in escrow. This shall apply even though one of the parties to the deed dies before the second delivery. This relation back doctrine has wide and general acceptance. Its roots are ancient for as far back as the Sixteenth Century we find the Perryman's Case, 77 Eng.Rep. 181, l. c. 183, in which it was said:

"* * * if a man delivers a writing (d) as an escrow to be his deed on certain conditions to be performed, and afterwards the obligor or obligee dies, and afterwards the condition is performed, the deed is good, for there was *traditio inchoata* in the life of the parties, *sed postea consummata existens* by the performance of the condition takes its effect by force of the first delivery, without any new delivery * * *."

The same doctrine was pronounced by this court in Savings Trust Co. of St. Louis v. Skain, 345 Mo. 46, 131 S.W.2d 566, l. c. 570, wherein it was said:

"* * * The relation of vendor and purchaser exists as soon as a contract for the sale and purchase of land is entered into. Equity regards the purchaser as the owner and the vendor as holding the legal title in trust for him: * * *. This equitable principle may be invoked in actions at law: * * * and that even though the purchaser has not been put in possession: * * *."

Hernandez v. Prieto, 349 Mo. 658, 162 S.W.2d 829; Seibel v. Higham, 216 Mo. 121, 115 S.W. 987; Schooler v. Schooler, 258 Mo. 83, 167 S.W. 444; 19 Am.Jur., Escrow, §§ 26 and 27; 117 A.L.R. 69, 70. There are also numerous cases in which the rule is applied to deeds given to one other than the grantee to be unconditionally delivered to the grantee upon the grantor's death. Haer v. Christmas, Mo., 312 S.W.

2d 66; Meredith v. Meredith, 287 Mo. 250, 229 S.W. 179; Blackiston v. Russell, 328 Mo. 1164, 44 S.W.2d 22.

Appellants concede that the "relation back doctrine" is a recognized rule in Missouri but contend that it should only be used for the protection of the buyer. They assert that upon the death of the life tenants they as remaindermen held title and the life tenants had nothing to convey, citing Bullock v. Porter, 365 Mo. 572, 284 S.W.2d 598. That case had nothing to do with the theory here under consideration, but appellants cite it as authority for the proposition that their signatures on the deed were sufficient to pass title upon the death of the life tenants and that there is no need to employ the relation back rule to protect the buyer.

As stated in Savings Trust Co. of St. Louis v. Skain, above quoted, the doctrine is an equitable principle. So we weigh the equities here presented. All four of the Egans had been in litigation over the title to the land conveyed. They had settled the litigation, as stated, by stipulation, judgment and deeds. All of these took into consideration the impending condemnation or sale of the land for highway purposes and the compensation that was to be derived from the sale or condemnation. This is apparent throughout the case. When the anticipated time came the deal was closed with the state. When James and Bessie Egan signed the deed with Melford and Alberta Egan all parties disposed of their interest in one deed with full agreement and knowledge of what each would receive. For them it was a completed transaction. It therefore appears that the application of the doctrine of relation back to these facts is within the intended use of the doctrine as an equitable means to effectuate the intent of the parties.

The trial court did not err in so holding and the judgment is affirmed.

PER CURIAM.

The foregoing opinion by WOLFE, Special Judge, is adopted as the opinion of the Court.

HOLMAN, P. J., and HYDE, J., concur.

HENLEY, J., not sitting.