Thomas R. HAMMACK, as an Individual and as Cotrustee, by and on Behalf of the Beneficiaries of the Hammack Family Farm Trust, Appellant–Respondent,

v.

COFFELT LAND TITLE, INC., Respondent–Appellant.

Nos. WD 69133, WD 69134.

Missouri Court of Appeals, Western District.

March 17, 2009.

---

Elvin S. Douglas, Harrisonville, MO, for Appellant–Respondent.

Wendell E. Koerner, Jr., Kansas City, MO, for Respondent–Appellant.

Before: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and ALOK AHUJA, Judge.

JOSEPH M. ELLIS, Judge.

On February 7, 1997, H. Stanley Hammack and his wife, Jeannette Hammack, ("Grantors") executed a revocable, inter vivos trust denominated the "Stan Hammack Family Revocable Trust Dated 02/07/97" and placed almost all of their assets therein. One of the assets left outside the trust was the undivided one-half interest Stanley held in a 1,040 acre farm that used to be owned by his parents. The other undivided one-half interest in the farm was held by Stanley's brother, Thomas R. Hammack. The trust executed by Grantors stated that Stanley's one-half interest in the farm would be conveyed to the trust by beneficiary deed upon his death. Also on February 7, 1997, the Grantors executed a beneficiary deed conveying title in the half-interest in the farm to the Stan Hammack Family Revocable Trust upon Stanley's death.

The Hammack Family Revocable Trust provided that, in the event Stanley predeceased Jeannette, the trust estate would be divided into two parts. The half interest in the farm was to be placed by the trustee in a trust to be known as the "Hammack Family Farm Trust." The remaining assets in the trust were to be placed in a trust called the "Jeannette M. Hammack Trust." Any income earned by the Family Farm Trust was to be paid to Jeannette for life. After her death, income from the Farm Trust was to go to Thomas Hammack for life, and, upon his death, the property would be divided per

stirpes among Thomas's children. The Hammack Family Revocable Trust also dictated that "the Hammack Family Farm Trust may not be amended or revoked, nor may any of the assets be withdrawn therefrom, after the death or incapacity of Grantor H. Stanley Hammack."

On December 3, 1998, Stanley, Jeannette, Thomas, and Thomas's wife, Janet, executed a contract to sell the 1,040 acre farm to P. David Perkins and David D. Davenport. That same day, Stanley, Jeannette, Thomas, and Janet executed, in their individual capacities, a General Warranty Deed transferring title to Perkins and Davenport, and they placed that title in escrow with Coffelt Land Title, Inc., pending payment.

On December 6, 1998, Stanley died.

On February 1, 1999, Jeannette executed a Trustee's deed conveying an undivided one-half interest in the 1,040 acre farm to Perkins and Davenport. Thomas and Janet also executed a general warranty deed conveying a one-half interest in the farm to Perkins and Davenport. Perkins and Davenport tendered payment, and the sale of the farm was closed. Coffelt Land Title issued a check from the proceeds of the sale to Jeannette for $176,725.69 and a check to Thomas and Janet in that same amount.

On January 12, 2004, Thomas, individually and on behalf of himself and the other beneficiaries of the Hammack Family Farm Trust ("Plaintiff"), filed a two count Petition for Damages in the Circuit Court of Cass County against Coffelt Land Title. In both counts, the petition averred that Coffelt Land Title entered into an escrow agreement with Stanley, Jeannette, Thomas, and Janet. In Count I, Plaintiff asserted a claim based on negligence, alleging that Coffelt Land Title had breached a duty of care owed as a result of the escrow relationship. In Count II, Plaintiff alleged that Coffelt Land Title breached the terms of the escrow agreement. Both counts were premised on the assertion that Coffelt Land Title issued a check to Jeannette in her personal capacity instead of as Trustee for the Hammack Family Trust when the real estate transaction closed. On June 29, 2006, Plaintiff filed a motion for summary judgment, which was subsequently granted by the trial court. After a hearing on damages, the trial court entered judgment against Coffelt Land Title for $176,726.50. The court denied Plaintiff's request for pre-judgment interest.

Both parties appeal from the trial court's judgment. Coffelt Land Title challenges the entry of summary judgment, and Plaintiff challenges the denial of an award of interest. We first examine Coffelt Land Title's claims of error.

"The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Allen v. Midwest Inst. of Body Work & Somatic Therapy, L.L.C.*, 197 S.W.3d 615, 619 (Mo.App. W.D.2006) (internal quotation omitted). "Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law." *Id.* "The movant bears the burden of establishing both a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment." *Lewis v. Biegel*, 204 S.W.3d 354, 356 (Mo.App. W.D. 2006) (internal quotation omitted).

■ "Appellate review of the grant of summary judgment is *de novo.*" *Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 297 (Mo.App. W.D.2006). "The record below is reviewed in the light most favorable to the party against whom

summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Lewis*, 204 S.W.3d at 356 (internal quotation omitted). However, "[f]acts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Walker*, 208 S.W.3d at 297. "Summary judgment is appropriate only when the record demonstrates that there are no genuine disputes regarding material facts and that the moving party is entitled to judgment as a matter of law." *Lewis*, 204 S.W.3d at 356 (internal quotation omitted).

On appeal, Coffelt Land Title claims that the trial court erred in entering summary judgment on behalf of Plaintiff because genuine issues of material fact remained in the case and because Plaintiff failed to establish that he was entitled to judgment as a matter of law. Coffelt Land Title asserts that genuine issues remain regarding what duties it owed to Plaintiff and whether those duties were breached. Coffelt Land Title further argues that it was disputed whether Coffelt Land Title knew or should have known of the specific provisions of the Hammack Family Trust.

"When a transaction is closed through an escrow agent the agent is charged with the performance of an express trust governed by the escrow agreement with duties to perform for each of the parties which duties neither can forbid without the consent of the other." *Boatmen's Nat'l Bank of St. Louis v. Dandy*, 804 S.W.2d 783, 785–86 (Mo.App. E.D. 1990). The escrow agent "is absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed." *Southern Cross Lumber & Millwork Co. v. Becker*, 761 S.W.2d 269, 272 (Mo.App. E.D.

1988). "An escrow agreement creates a fiduciary relationship, and breach of the fiduciary duty constitutes a tort." *Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 940 (Mo.App. E.D.1992). However, "[t]he fiduciary relationship of an escrow agent and the other parties to the agreement is much narrower in scope than other fiduciary relationships such as attorney/client." *Gilmore v. Chicago Title Ins. Co.*, 926 S.W.2d 695, 699 (Mo.App. E.D.1996). "An escrow agent is bound by the terms of the escrow agreement and breaches the fiduciary duty only when the agent fails to follow those terms." *Id.* Thus, in order to establish either breach of contract or negligence on the part of Coffelt Land Title, Plaintiff was required to prove that Coffelt Land Title failed to comply with the terms of the escrow agreement.

Neither Plaintiff's motion for summary judgment nor his statement of uncontroverted facts references the escrow agreement or the terms thereof in any way. Indeed, Plaintiff's petition alleged that "Plaintiff has not seen the contractual terms and obligations of Defendant under the escrow agreement." Moreover, in Coffelt Land Title's response to Plaintiff's motion for summary judgment, Coffelt asserted specifically that "the terms of the escrow" agreement was a disputed fact, to which Plaintiff responded that the terms of the escrow agreement "is not a material fact ... [a]s the transaction which this escrow account would have been based was not handled under those terms." Thus, Plaintiff is saying that we don't know what the terms of the escrow agreement were, but the transaction was not handled in accordance with those unknown terms, and, therefore, those unknown terms are not germane to this case. The fallacy of this proposition is self evident. While Plaintiff's suggestions in support of

his motion for summary judgment generally state that Coffelt Land Title, "as escrow agent, breached its contractual and fiduciary duties to Plaintiff, both individually and in his capacity as co-trustee under the Hammack Family Farm Trust," Plaintiff does not identify what provision of the escrow agreement was allegedly breached. Having failed to establish through uncontroverted facts what duties Coffelt Land Title assumed under the escrow agreement, Plaintiff has not established his right to judgment as a matter of law on either his breach of contract or negligence claims.[1]

Accordingly, the trial court's entry of summary judgment in favor of Plaintiff is reversed, and the cause is remanded to the trial court for further proceedings.

J. HOWARD concurs in principal opinion.

J. AHUJA concurs in principal opinion and files separate concurring opinion.

ALOK AHUJA, Judge, concurring.

I concur fully in the Court's opinion, and in its reversal of the summary judgment entered in favor of Plaintiff Thomas Hammack. As the primary opinion correctly observes, without knowing the terms of the escrow agreement between the Hammacks and Defendant Coffelt Land Title, it is impossible to say that Hammack is entitled to judgment as a matter of law on either his negligence or breach of contract claims. I write separately because, in my view, reversal is also mandated based on one of Coffelt's alternative arguments. Since that issue will inevitably recur on remand, in the interest of judicial economy I believe it merits discussion now.

The Hammack Family Farm Trust (the "Trust") claims an interest in Stanley and Jeannette Hammack's undivided one-half interest in the 1,040–acre Hammack family farm (the "Property") only by virtue of a beneficiary deed executed by Stanley and Jeannette Hammack on February 7, 1997. Unless the beneficiary deed effectively transferred the Property to the Trust, Thomas Hammack's claims against Defendant Coffelt Land Title, Inc. necessarily fail, since they depend on a finding that the proceeds of sale of the Property should have been disbursed to the Trust, rather than to Jeannette Hammack individually.[2]

Coffelt's third Point Relied On argues that the summary judgment should be reversed because the evidence creates a genuine issue whether Stanley and Jeannette Hammack effected a transfer of their rights in the Property during Stanley Hammack's lifetime, which would have the effect of terminating the beneficiary deed on which Thomas Hammack's claims depend. I agree.

Missouri authorizes beneficiary deeds like the one executed by Stanley and Jeannette Hammack in § 461.025.1,[3] which states:

A deed that conveys an interest in real property to a grantee designated by

---

1. Having reached this conclusion, we need not address either of the parties' remaining points on appeal.

2. It is noteworthy that Jeannette Hammack, who purportedly was paid the sales proceeds in error, is one of the co-Trustees of the Trust, is entitled to income from the Trust during her lifetime, and thus would presumably benefit if Coffelt is required to disburse the sales proceeds a second time (now to the Trust of which she is a beneficiary, rather than to her personally). Although on Plaintiff Thomas Hammack's theory Jeannette Hammack was the wrongful recipient of over $175,000.00 belonging to the Trust, she has not to this point been named as a defendant or third-party defendant in this action.

3. All statutory references are to RSMo 2000.

the owner, that expressly states that the deed is not to take effect until the death of the owner, transfers the interest provided to the designated grantee beneficiary, effective on death of the owner, if the deed is executed and filed of record with the recorder of deeds in the city or county or counties in which the real property is situated prior to the death of the owner. A beneficiary deed need not be supported by consideration or be delivered to the grantee beneficiary. A beneficiary deed may be used to transfer an interest in real property to a trust estate, regardless of such trust's revocability.

The relevant Missouri statutes also make clear, however, that "[p]rior to the death of the owner, a beneficiary shall have no rights in the property by reason of the beneficiary designation." § 461.031.1. Consistent with the fact that a beneficiary deed confers no *present* interest on the named beneficiary, the nonprobate transfers law specifies that "[a] beneficiary designation may be revoked or changed in whole or in part during the lifetime of the owner." § 461.033.1. In particular, "[a] transfer during the owner's lifetime of the owner's interest in property, with or without consideration, terminates the beneficiary designation with respect to the property transferred." § 461.033.5. *See generally Estate of Dugger v. Dugger*, 110 S.W.3d 423, 428–29 (Mo.App. S.D.2003).

Thus, the grantor's simple act of transferring his interest in property subject to a beneficiary deed, during his lifetime, supersedes and terminates a beneficiary designation with respect to that same property. The question would become, then, whether Stanley and Jeannette Hammack transferred their interest in the Property during Stanley Hammack's lifetime.

As the majority opinion notes, on December 3, 1998, Stanley, Jeannette, Thomas, and his wife Janet, executed a contract to sell the entire 1,040–acre farm to David Perkins and David Davenport; significantly, the four Hammacks also executed a General Warranty Deed, unconditional on its face, transferring the farm to Perkins and Davenport, and delivered that deed in escrow to Coffelt.

Missouri cases hold that, where a deed is transferred to an escrow agent for delivery to a transferee upon the transferee's fulfillment of specified conditions (frequently payment of a purchase price), when those conditions are satisfied the transfer is deemed to "relate back" to the date on which the transferor delivered the deed to the escrow agent. Significantly, this rule applies even where the transferor dies between the delivery of the deed into escrow and the ultimate consummation of the transaction. Thus, in *Donnelly v. Robinson*, 406 S.W.2d 595 (Mo.1966), two life-estate holders executed a deed transferring their interest in certain property to the State Highway Commission on October 5, 1960. On the same day, the deed was delivered to the Wayne County Bank "to be held in escrow by the bank until the check for the purchase price was received from the State Highway Commission." *Id.* at 597. The bank/escrow agent received the Highway Commission's check on November 29, 1960; unfortunately, the life-estate holders were both killed in an automobile accident on October 25, 1960, over a month earlier. Despite the fact that the life-estate holders had died, and their life estates had accordingly terminated, before fulfillment of the condition on the sale of their interests, the Supreme Court held that the consummated transaction "related back" to October 5, 1960:

The respondents ... rely, as the trial court did, upon the effect of the delivery of the fully executed deed dated October 5, 196[0], to the Wayne County Bank.

The bank was to deliver this deed to the Missouri Highway Department upon payment of the purchase price. The purchase money was paid; the deed delivered and the respondents contend that the trial court properly held that the date of the concluded transaction related back to the date of the deed and its delivery to the bank....

The court invoked the rule that upon final delivery by a depository of a deed deposited in escrow the instrument will be treated as relating back to, and taking effect at the time of the original deposit in escrow. This shall apply even though one of the parties to the deed dies before the second delivery. This relation back doctrine has wide and general acceptance. Its roots are ancient[,] [dating] as far back as the Sixteenth Century....

*id.* at 597–98; *see also Pipes v. Sevier*, 694 S.W.2d 918, 926 (Mo.App. W.D.1985) (where "[a] deed unconditional in terms [is] placed beyond the control of the grantor upon its delivery to the third party escrow holder," " '[a]cceptance after the death of the grantor dates back to the time of the delivery of the deed to the ... [escrow holder] and renders it a transfer as of that date' " (citation omitted)); *Turner v. Mallernee*, 640 S.W.2d 517, 523 (Mo. App. S.D.1982) (" 'Properly considered, conditional delivery, or delivery in escrow, is the same as any other delivery, except that it is subject to the satisfaction of a condition. After the condition has been satisfied, there is an operative conveyance which is to be regarded as having been delivered at the time of its conditional delivery ....' " (citation omitted)).[4]

Here, if Stanley and Jeannette Hammack delivered the General Warranty Deed to Coffelt for its delivery to Perkins and Davenport upon their fulfillment of particular conditions, and those conditions were ultimately satisfied and the transaction consummated, under the "relation back" doctrine the transfer would be deemed to have occurred on the date of Stanley and Jeannette Hammack's original delivery of the deed to Coffelt. The Hammacks' original delivery to Coffelt apparently occurred on December 3, 1998, prior to Stanley Hammack's death. If Stanley and Jeannette Hammack in fact transferred their interest in the Property to Perkins and Davenport effective December 3, 1998, however, this would have the effect of terminating the February 1997 beneficiary deed by virtue of the operation of § 461.033.5, and Thomas Hammack's claims in the present lawsuit would necessarily fail.

These issues cannot be resolved without knowing the terms and conditions of the escrow agreement entered into between the Hammacks and Coffelt, under which the December 1998 deed was delivered into escrow. Moreover, the situation is complicated by the fact that in February 1999, after Stanley Hammack's death, Jeannette Hammack executed a *Trustee's* Deed conveying the Property to Perkins and Davenport. According to Thomas

---

4. Hammack cites *Carolan v. Nelson*, 226 S.W.3d 923, 923 (Mo.App. W.D.2007), for the proposition that "[i]n Missouri, ... a deed delivered 'in escrow' is viewed as a *conditional* delivery that does not effectively pass title to the grantor until the condition is satisfied." But *Carolan* does not involve an escrowed deed, and on my reading provides no support for the proposition for which Hammack cites it. Further, even if Hammack is correct that title does not pass in the case of an escrowed deed until any conditions are satisfied, the "relation back" doctrine holds that—once those conditions are satisfied—the transfer is *deemed to have occurred* as of the date of original delivery into escrow. Thus, even if it were properly supported, Hammack's contention would not avoid application of the "relation back" doctrine.

Hammack, Jeannette Hammack's execution of this Trustee's Deed was procured by Coffelt, although the factual support for that assertion is not readily apparent. Nevertheless, while the relation-back issue may not be capable of final resolution in this appeal, I believe it does supply an additional ground for reversal of the summary judgment entered by the circuit court.