

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| BETH WEISZ, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD82967 |
| | ) | |
| GREAT AMERICAN TITLE Q 1-103-1, LLC, a/k/a GREAT AMERICAN TITLE Q 1-103-2, LLC, a/k/a GREAT AMERICAN TITLE OF THE OZARKS, LLC, | ) ) ) ) ) ) | FILED: June 9, 2020 |
| Respondent. | ) | |

**Appeal from the Circuit Court of Ray County
The Honorable Kevin L. Walden, Judge**

**Before Division Two: Mark D. Pfeiffer, P.J., and
Alok Ahuja and Gary D. Witt, JJ.**

Beth Weisz entered into a contract with a builder for construction of a new home. Weisz put the funds for construction of the home in escrow, with Great American Title Company serving as the escrow agent. Weisz sued Great American in the Circuit Court of Ray County. She alleged that Great American had breached the terms of the escrow agreement, and its fiduciary duties to Weisz, when it made unauthorized disbursements of escrowed funds. The circuit court granted summary judgment to Great American, finding that the challenged disbursements were consistent with the terms of the escrow agreement, that Weisz had expressly authorized the payments, and/or that Weisz had ratified Great American's disbursements. The circuit court also awarded Great American sanctions under

Supreme Court Rule 55.03, finding that Weisz's claims against Great American were factually unfounded and frivolous.

Weisz appeals. We reverse, and remand to the circuit court for further proceedings.

## Factual Background

On June 21, 2012, Beth Weisz entered into a Sales Contract with Innovative Builders and Developers, LLC for the purchase and construction of a modular home in Hardin. The parties agreed that the full contract price of $239,240 would be paid to Innovative Builders in three installments when particular milestones were reached. They agreed that Weisz would deposit the full contract price in escrow, with Great American serving as escrow agent. The Letter of Instruction to Great American, executed by Weisz and Innovative, specified that:

> The above referenced Buyer [Weisz] has or will deposit with Great American Title the sum of Two Hundred Thirty Nine thousand Two Hundred Forty Dollars ($239,240) to be used by the Builder [Innovative] to complete construction of a single residential home (Exhibit A) for the above referenced Buyer.
>
> I.      Great American Title shall release said funds by builders invoice as follows:
>
> 1st Draw:    At contract signing – 20%
>
> 2nd Draw:    Home Order and Foundation – 70%
>
> 3rd Draw:    Paid at completion once Lien Waivers and Buyer signs off – 10%

The Letter of Instruction did not specify any fee to be paid to Great American for its services as escrow agent, or how any fee would be paid.

On June 26, 2012, Weisz deposited $239,240, the full contract amount, into an escrow account held by Great American at Great Southern Bank. On the same day, Great American made two payments out of the escrow account. The first was a $400 disbursement to Great American, as payment for its services as escrow agent. The second payment was in the amount of $47,868 (or 20% of the contract price) to

Innovative. Innovative had issued Great American an invoice in that amount on June 22, 2012.

On July 9, 2012, Great American made a second disbursement to Innovative for $167,468 (70% of the contract price), after receiving an invoice from Innovative on the same date, requesting payment of the second draw. On August 15, 2012, Innovative returned $98,000 to Great American. The reason for this refund is not fully developed in the record, but it appears that Innovative returned the money because the modular home had not yet been delivered to it. Innovative's $98,000 refund payment was credited to Weisz's escrow account.

In mid-August 2012, Weisz requested information from Great American concerning the escrow account in connection with a loan application she was making. In a pair of e-mails on August 16, 2012, Alicia Adams with Great American informed Weisz that Great American had received "an initial 239,240.00 dollars that was to be disbursed to [I]nnovative [H]omes as needed," and that Great American "did get a wire in the amount of $98,000.00 on 8/15/2012 regarding the Beth Weisz account." In her affidavit submitted in opposition to Great American's summary judgment motion, Weisz asserted that, during her discussions with Adams, "Ms. Adams said she did not know why" Innovative had returned $98,000 to the escrow account. Weisz testified in her affidavit that she did not receive an account balance or statement at that time, and that she was not aware what money had been disbursed to that point. She stated that "Ms. Adams said my money was still there," and that Weisz "asked that Great American Title not disburse any further funds" pending instructions from Weisz.

In her affidavit, Weisz stated that on August 24, 2012, she was able to confirm with the manufacturer of the modular home "that my home had been ordered." She accordingly e-mailed Adams on that date, stating that "I did get confirmation that my home is being built. So I am ok w/ further funds dispersment

3

[*sic*]."  Weisz testified that, at that time, she did not know of the two payments Great American had already made to Innovative, and "believed 80% of my original deposit was still . . . held in the escrow account" (*i.e.*, all but the first draw, which was due to be paid on contract signing).

On October 8, 2012, Great American received an invoice from Innovative, requesting payment of $113,362.  The invoice states that the requested amount of $113,362 represented the "2nd Draw Balance per Sales Contract 70% ($239,240)" – even though the remaining balance of the second draw amount was only $98,000 (the amount which Innovative had previously been paid, but had refunded to Great American).  The record does not explain how Innovative calculated the invoice amount of $113,362.

Adams e-mailed Weisz on October 8, 2012:  "I have a request to pay 113,692.00 [to] them by wire today for your home.  Is this approved by you?"  Weisz responded, "Yes[.]"  Weisz stated in her affidavit that she believed she was approving payment of the second (70%) draw under the escrow agreement.  Great American disbursed the requested sum of $113,362 to Innovative on the same day.

On November 1, 2012, Weisz e-mailed Adams:  "I am having issues again with my contractor.  Can you tell me how much and when disbursements have been made from my account?"  Adams responded that Great American had "disbursed 231,408.00 total and we have $7832.00 left to draw," and asked about the status of the home's construction.  Weisz responded:

> The house has been delivered, but not yet put together.  Multiple
> issues w/ foundation.  I thought that the majority had been disbursed.
> That is fine.  Thank you for the information[.]

In a following e-mail, Weisz asked that, until she was able to get the construction issues resolved, "Can you hold off on any further disbursements – even though it's

4

just a drop in the bucket?" Great American did not make any further disbursements from the escrow account.

On February 8, 2014, Weisz filed her petition against Innovative, Debra Watkins (who had signed the Sales Contract and escrow agreement on Innovative's behalf), and Great American. With respect to Innovative and Watkins, Weisz alleged that the home had been defectively constructed, and that Innovative and Watkins had failed to pay various contractors whom they had employed to work on the home. Weisz alleged that she was required to satisfy the claims of the unpaid contractors, and hire other contractors to complete the home's construction in a satisfactory manner. She alleged claims against Innovative and Watkins for breach of contract, and for violation of Missouri's Merchandising Practices Act.

Weisz's petition alleged that Great American breached the terms of the escrow agreement, and its fiduciary duties to Weisz, by making unauthorized disbursements from the escrow account to Innovative, and to itself. Weisz prayed for damages against Great American "in excess of $25,000," as well as interest and costs.

On August 19, 2014, Great American moved for summary judgment. It argued that the payments it had made from the escrow account complied with the Letter of Instruction, were made with Weisz's express approval, and/or were later ratified by Weisz. On November 25, 2014, the circuit court entered an order sustaining Great American's motion for summary judgment with respect to the disbursements to Innovative Builders. The court's order left "remaining . . . the [issue of] the propriety of the disbursement of $400 to Great American Title."

On the same day that it moved for summary judgment, Great American also filed a motion for sanctions under Rule 55.03, contending that Weisz's claims against it were factually unfounded and frivolous. On May 4, 2015, the circuit court

5

entered an order imposing sanctions against Weisz and her counsel in the amount of $6,000.

Weisz's claims against Innovative and Watkins were tried to the court on November 29, 2016. On December 19, 2016, the circuit court entered judgment against Innovative and Watkins, jointly and severally, in the amount of $120,273.17.

The parties agreed to submit the issue of Great American's $400 escrow agent fee to the court on the existing record. On April 27, 2017, the court entered judgment in favor of Weisz for $400. The court found that Great American had an agreement with Innovative and Watkins, but not with Weisz, for payment of its escrow agent fee, and had improperly collected its $400 fee from the escrowed funds.

Weisz appeals the judgment concerning her claims against Great American, and the award of sanctions to Great American.[1]

## Discussion

## I.

In her first Point, Weisz argues that the circuit court erroneously entered summary judgment in Great American's favor. Weisz contends that genuine issues of material fact exist concerning whether Great American breached the escrow agreement, and whether she expressly authorized or ratified any payments which varied from the terms of the escrow agreement.

---

[1] Weisz filed her initial notice of appeal in June 2017. That appeal was docketed in this Court as No. WD80885. In that appeal, Weisz sought to challenge the disposition of her claims against all three defendants (Innovative, Watkins, and Great American), as well as the sanctions award. We remanded the case to the circuit court for a new trial on Weisz's claims against Innovative and Watkins, because of the lack of any transcript of the November 29, 2016 trial. *See* Order entered on February 16, 2018 in No. WD80885. Following further proceedings in the circuit court, and the entry of a new judgment, Weisz filed the present appeal. She no longer raises issues concerning her claims against Innovative and Watkins.

"Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Lester v. Nationstar Mortg., LLC*, 505 S.W.3d 843, 846 (Mo. App. W.D. 2016) (citation omitted).  We review the circuit court's grant of summary judgment *de novo*.  *LVNV Funding, LLC v. Mavaega*, 527 S.W.3d 128, 133 (Mo. App. W.D. 2017).  We view the record in the light most favorable to the party against whom judgment was entered, and accord the non-movant the benefit of all reasonable inferences from the record.  *Lester*, 505 S.W.3d at 846.

Generally, an escrow agent's failure to abide by the terms of an escrow agreement is a breach of contract.  *Hammack v. Coffelt Land Title, Inc.*, 284 S.W.3d 175, 178 (Mo. App. W.D. 2009).  "When a transaction is closed through an escrow agent the agent is charged with the performance of an express trust governed by the escrow agreement."  *Id.* (citation and internal quotation marks omitted).  "When a person acts as the depository in escrow, the person is bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed."  *Bakewell v. Heritage Nat'l Bank*, 890 S.W.2d 653, 659 (Mo. App. E.D. 1994) (citing *S. Cross Lumber and Millwork Co. v. Becker*, 761 S.W.2d 269, 272 (Mo. App. E.D. 1988)).  In addition, "[a]n escrow agreement creates a fiduciary relationship, and breach of the fiduciary duty constitutes a tort.  . . .  An escrow agent is bound by the terms of the escrow agreement and breaches the fiduciary duty . . . when the agent fails to follow those terms."  *Hammack*, 284 S.W.3d at 178 (citations and internal quotation marks omitted).

The circuit court entered judgment for Weisz on her claim that the $400 payment to Great American was unauthorized, and that aspect of the circuit court's judgment is not at issue on appeal.

Great American established that it was entitled to summary judgment with respect to its payment of the first two draws to Innovative.  Weisz does not dispute

7

that, under the express terms of the escrow agreement, Innovative was entitled to an initial payment of 20% of the full contract price, or $47,868, on signing of the Sales Contract, which occurred on June 21, 2012. Innovative presented Great American with an invoice for $47,868 on June 22, 2012. Weisz does not challenge Great American's payment to Innovative of the invoiced amount on June 26, 2012, and the affidavit she submitted in opposition to Great American's summary judgment motion acknowledged that she was aware, as of August 24, 2012, that the initial draw of 20% of the contract price had been paid.

The record also establishes that Weisz has no claim against Great American for its payment of the second (70%) draw amount to Innovative. Innovative invoiced Great American for the second draw amount on July 9, 2012, and Great American made a second disbursement to Innovative for $167,468 (70% of the contract price) on the same date. Weisz contends on appeal (without citation of authority) that Great American should have required Innovative to provide proof that the conditions for the second disbursement had been satisfied (the ordering of her modular home from the manufacturer, and the completion of the home's foundation). But whether or not Great American prematurely disbursed the second draw to Innovative without adequate documentation on July 9, 2012, Weisz testified in her affidavit that she verified that the conditions for payment of the second draw had been satisfied on August 24, 2012, and that she expressly directed Great American to make the second disbursement on that date. Further, Weisz testified that, when she gave Great American authorization to pay Innovative $113,692 on October 8, 2012, she believed she was authorizing the second disbursement. The summary judgment record establishes that Great American's payment to Innovative of the second disbursement (of 70% of the home's total purchase price) was consistent with the escrow agreement, and/or expressly authorized by Weisz.

The summary judgment record reflects that by November 1, 2012, Great American had paid Innovative a total of $230,398, or more than 96% of the full contract price, even though Weisz was engaged in an ongoing dispute with Innovative concerning the construction of her home.[2] Under the Letter of Instruction, Great American was required to withhold 10% of the total contract price from Innovative until "completion once Lien Waivers and Buyer signs off." These conditions had not occurred when Great American paid Innovative more than 90% of the full contract price, by making the $113,692 payment to Innovative on October 8, 2012. To the extent the October 2012 payment exceeded 90% of the total contract price, that payment violated the clear terms of the Letter of Instruction. The amount of Great American's overpayment from the escrow account exceeded $15,000.

It cannot be said, on the existing record, that Weisz expressly authorized Great American to vary from the terms of the Letter of Instruction, and pay Innovative part of the final draw. Although Weisz authorized Great American in October 2012 to make the $113,692 disbursement, she testified by affidavit that, at the time, she was not aware that Great American had *already* paid Innovative part of the second draw amount. She stated that she believed she was authorizing the second draw amount in October 2012, *not* a payment which exceeded the authorized amount of the second draw. A factual dispute exists concerning whether Weisz's approval of the $113,692 payment on October 8, 2012, authorized Great American to depart from the draw schedule contained in the Letter of Instruction.

---

[2] Great American had also paid itself a $400 escrow agent fee, which the circuit court found to be unauthorized.

We note that on November 1, 2012, Great American employee Alicia Adams informed Weisz that a total of $231,408 had been disbursed from the escrow account. The record does not explain the slight discrepancy between Adams' statement of the total payments, and the four disbursements reflected in the summary judgment record. This minor discrepancy is not relevant to our analysis.

9

Finally, Great American was not entitled to summary judgment on the basis that Weisz later ratified Great American's unauthorized payment of part of the final draw to Innovative. Ratification is an affirmative defense. *Ambruster v. Ambruster*, 31 S.W.2d 28, 38 (Mo. 1930); *Murphy v. Jackson Nat'l Life Ins. Co.*, 83 S.W.3d 663, 667 (Mo. App. S.D. 2002).[3] As such, Great American bears the burden of establishing that ratification bars Weisz's claims. *English ex rel. Davis v. Hershewe*, 312 S.W.3d 402, 407 (Mo. App. S.D. 2010).

"Under Missouri law ratification is an express or implied adoption or confirmation by one person, with knowledge of all material matters, of an act performed on [their] behalf by another who lacked the authority to do so." *Newman v. Schiff*, 778 F.2d 460, 467 (8th Cir. 1985) (citing *Hyken v. Travelers Ins. Co.*, 678 S.W.2d 454, 459 (Mo. App. E.D. 1984); other citations omitted). In effect, ratification is "confirmation after conduct." *Springfield Land and Develop. Co. v. Bass*, 48 S.W.3d 620, 628 (Mo. App. S.D. 2001) (citation and internal quotation marks omitted). "[R]atification occurs when person A confirms or adopts the conduct of person B, who acted on behalf of person A in absence of person A's authority." *Murphy*, 83 S.W.3d at 668 (citation omitted).

Whether or not a principal has ratified the unauthorized actions of an agent or purported agent is a factual question. If the circumstances are subject to differing interpretations, then summary judgment is inappropriate, and the issue should be submitted to the trier of fact.

> [R]atification . . . may be implied by any facts and circumstances from which it can be reasonably inferred that the party to be charged (with

---

[3] Great American did not file an answer to Weisz's petition, and it therefore never pleaded ratification as an affirmative defense. Weisz did not object to Great American's reliance on ratification in its summary judgment motion, despite its failure to plead ratification as an affirmative defense. Nor has Weisz argued on appeal that Great American is foreclosed from relying on a ratification theory due to this pleading defect. Given our disposition, we need not further consider the pleading issue, although Weisz may be entitled to raise it on remand.

knowledge of the facts) acquiesced in and accepted the transaction as his own, or which are inconsistent with any other intention. . . .

As to what facts, circumstances, and conduct will justify the inference of agency, no fixed rule can be stated. There is no particular mode by which it must be established. It depends upon the situation in each individual case. . . .

Probably the most certain evidence of implied ratification is the acceptance and retention of the fruits of the contract with full knowledge of the material facts of the transaction. . . .

Since ratification may be established by facts and circumstances, it is sufficient to make a question for the trier of the fact if the whole sum total of the facts and circumstances justifies the reasonable inference that the party charged as principal accepted the transaction as his own. . . . ***If there is any dispute as to the facts, or if different inferences can reasonably be drawn, ratification is a question of fact to be determined by the trier of the fact and not by the court.***

*Epps v. Epps*, 438 S.W.3d 422, 424–25 (Mo. App. S.D. 2014) (emphasis added; quoting *Wilks v. Stone*, 339 S.W.2d 590, 595-96 (Mo. App. 1960)).

The most recent RESTATEMENT OF AGENCY likewise recognizes that ratification is a factual matter, and that a given set of circumstances may be subject to conflicting interpretations:

*Actions that constitute ratification.* Ratification requires an objectively or externally observable indication that a person consents that another's prior act shall affect the person's legal relations. . . .

. . . First, a person may ratify an act by manifesting assent that the act affect the person's legal relations. Second, the person may ratify the act through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences. For example, knowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction. . . .

It is a question of fact whether conduct is sufficient to indicate consent. Conduct that can be otherwise explained may not effect ratification. For example, a principal's failure to terminate or reprimand an employee by itself is not likely to ratify the employee's unauthorized action because the employer may have varied reasons for failing to take action adverse to an employee.

RESTATEMENT (THIRD) OF AGENCY § 4.01, comment d (2006).

11

Great American relies on a single e-mail exchange on November 1-2, 2012, to establish that Weisz purportedly ratified Great American's unauthorized payment of part of the final draw to Innovative. According to the existing summary judgment record, this e-mail exchange began when Weisz e-mailed Adams: "I am having issues again with my contractor. Can you tell me how much and when disbursements have been made from my account?" Adams responded that Great American had "disbursed 231,408.00 total and we have $7832.00 left to draw." Weisz responded that, "I thought that the majority had been disbursed. That is fine. Thank you for the information[.]" In a later e-mail, Weisz asked that, in light of her ongoing dispute with the builder, "[c]an you hold off on any further disbursements – even though it's just a drop in the bucket?"

Presumably, the purpose of Weisz's initial November 1, 2012 inquiry was to ask how much money remained in the escrow account, so that she could use any undisbursed funds for negotiating leverage in connection with her "issues . . . with [her] contractor." When Adams gave Weisz the remaining balance, Weisz acknowledged that "I thought that the majority had been disbursed" – which would be true even if Great American had fully complied with the Letter of Instruction (since under the terms of the letter, only 10% of the contract price would have remained in escrow). Weisz's further statement, "[t]hat is fine," can be read as simply acknowledging that the majority of the escrowed funds had been disbursed, that only a small portion of the total contract price remained undistributed, and that she would have to employ those remaining funds as best she could in negotiating with her builder.

While a fact-finder could potentially determine, after a full trial, that Weisz's statement "[t]hat is fine" was intended to "accept [Great American's unauthorized disbursement] as [her] own," and that she thereby "consent[ed] to be bound by the . . . legal consequences" of Great American's unauthorized payment, that is not the

12

*only* reasonable reading of the November 2012 e-mail exchange. A fact-finder could reasonably read the exchange as simply Weisz's request for information which she could use in an ongoing dispute with Innovative, and her politely thanking Adams for providing her with the information she needed. A fact-finder could determine that, although Weisz thanked Adams for providing the information Weisz had requested, Weisz did not thereby endorse Great American's departure from the escrow agreement's clear terms, or adopt the improper payment as her own. It appears that the most common, and persuasive, form of ratification – retention of the benefits of an agent's unauthorized action – is absent here. A fact-finder could conclude that Weisz derived *no* benefit from Great American's over-payment of escrowed funds to Innovative but on the contrary, suffered a significant legal *detriment*.

Because a genuine issue of material fact exists as to whether Weisz expressly authorized or ratified Great American's payment of part of the final draw to Innovative, the circuit court erred in entering summary judgment for Great American on Weisz's claims against it. Point I is granted.

## II.

In her second Point, Weisz argues that the trial court erred in imposing sanctions against Weisz and her counsel. Weisz challenges the trial court's sanctions order on both procedural and substantive grounds.

Putting aside Weisz's procedural objections, the circuit court's sanctions order must be reversed in light of our conclusion that Weisz has presented a triable issue concerning whether Great American disbursed more than $15,000 from the escrow account in violation of the Letter of Instruction, and without her authorization or after-the-fact ratification.

We review a trial court's imposition of sanctions for an abuse of discretion. *Davis v. Wieland*, 557 S.W.3d 340, 347-48 (Mo. App. W.D. 2018). "An abuse of

13

discretion occurs when the court's order is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 348 (citation and internal quotation marks omitted).

Sanctions under Rule 55.03 are available to "penalize the filing of a frivolous pleading, motion, or other paper by an attorney." *Ingram v. Horne*, 785 S.W.2d 735, 737 (Mo. App. S.D. 1990). "Under Rule 55.03, there are basically three types of submitted papers which warrant sanctions:  factually frivolous (not 'well grounded in fact'); legally frivolous (not 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law'); and papers 'interposed for any improper purpose.'" *State ex rel. Accurate Const. Co. v. Quillen*, 809 S.W.2d 437, 440 (Mo. App. E.D. 1991) (quotation omitted).

In its order imposing sanctions on Weisz and her counsel, the circuit court found that she had prevailed only with respect to Great American's payment to itself of a $400 fee, which the court found to be *de minimis*.  The court found that Weisz's claims with respect to Great American's other disbursements from the escrow account were factually unfounded.  As we have explained above, however, Weisz has presented a triable issue whether Great American's disbursement of more than $15,000 from the escrow account was unauthorized.  In light of the substantial relief to which Weisz may be entitled, the circuit court's imposition of sanctions on Weisz and her counsel must be reversed.

## Conclusion

The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.

15