Harold TURNER and Mildred Turner, Plaintiffs-Appellants-Respondents,

v.

Roy MALLERNEE and Thelma Mallernee, Defendants-Appellants-Respondents.

Nos. 12429, 12438.

Missouri Court of Appeals, Southern District, Division One.

Sept. 28, 1982.

Motion for Rehearing and to Transfer to Supreme Court Denied Oct. 13, 1982.

Application to Transfer Denied Nov. 15, 1982.

Gary A. Love, Mark E. Fitzsimmons, Love & Doran, Springfield, for defendants-appellants-respondents.

Harold J. Fisher, Lynn C. Rodgers, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for plaintiffs-appellants-respondents.

FLANIGAN, Presiding Judge.

This is an action to quiet title to a 160-acre farm located in Douglas County. Plaintiffs are Harold Turner and Mildred Turner, his wife, and defendants are Roy Mallernee and Thelma Mallernee, his wife. Mildred and Roy are the children of Arthur Mallernee, who died on November 6, 1978. The parties base their respective claims of title on two competing deeds to the land, each signed and acknowledged by Arthur as grantor. In November 1975 Arthur signed a deed which named plaintiffs as grantees. The 1975 deed was never recorded. On October 3, 1978, Arthur signed a deed which named defendants as grantees. That deed was promptly recorded.

The petition was in three counts. Count I sought to establish title in plaintiffs based on the 1975 deed. Count II sought a decree invalidating the 1978 deed on the grounds that Arthur was incompetent at the time it was executed and that defendant Roy had exercised undue influence on Arthur with respect to its execution. Count III sought an order "impressing a constructive trust upon defendants" and "compelling defendants to convey the land to plaintiffs."

Sitting without a jury, the trial court found in favor of defendants on Counts I and III and in favor of plaintiffs on Count II. The trial court found that the 1975 deed was ineffective for lack of delivery. The trial court also found that the 1978 deed was ineffective because of undue influence exerted by Roy and lack of the grantor's competence. Both sides have appealed.

Although defendants have challenged the ruling on Count II, the evidence of both sides with respect to that count, including testimony from defendant Roy himself, overwhelmingly demonstrated that undue influence was exercised by Roy and that Arthur was incompetent to execute the 1978 deed. It would serve no precedential purpose to recount the evidence pertinent to Count II. The appeal by defendants has no merit.

The dispositive issue is whether the 1975 deed was delivered. The parties agree that Arthur owned the farm prior to the execution of the 1975 deed, that Arthur was competent when the 1975 deed was executed, and that the 1975 deed was not tainted by undue influence.

"A deed, to be operative as a transfer of the ownership of land, or of an interest or estate therein, must be delivered; its delivery gives the instrument force and effect.... 'Delivery' signifies that all dominion and control over the deed is passed from the grantor to the grantee, or to someone for him, with the intention of presently transferring the ownership of land, or an interest or estate therein.... A manual delivery of a deed is not conclusive proof of a delivery, since the transfer of the dominion and control over the deed must be unhampered with the reservation of any right of revocation or recall and must be with the intent to presently pass title." *Klatt v. Wolff,* 173 S.W.2d 933, 936[3–5] (Mo.1943). (Citing authorities.)

"Whether or not a deed has been delivered is a mixed question of law and fact. The element which controls the resolution of that question is the intention of the parties, especially the intention of the grantor. The vital inquiry is whether the grantor intended a complete transfer— whether the grantor *parted with dominion over the instrument* with the intention of relinquishing *all* dominion over it and of making it presently operative as a conveyance of the title to the land." *Meadows v. Brich,* 606 S.W.2d 258, 260 (Mo.App.1980). (Emphasis in original.)

" 'On the question of whether, in a given case, there has been a delivery the intention

of the grantor is the controlling element.' ... *Dallas v. McNutt,* 297 Mo. 535, 249 S.W. 35, 36." *Haer v. Christmas,* 312 S.W.2d 66, 68 (Mo.1958). The intent to deliver may be manifested by words or acts or both. *Ragan v. Ragan,* 445 S.W.2d 825, 826[2] (Mo.1969). "[T]he fact of a manual delivery to and the possession of a deed by the grantee is a circumstance to be taken into account in attempting to determine whether the grantor intended to pass a present estate or interest." *Wheeler v. Rines,* 375 S.W.2d 48, 50–51 (Mo.1964). If a valid delivery has taken place it is not rendered ineffectual by the act of the grantee in placing the deed in the custody of someone for safekeeping, even if the custodian is the grantor. *Shroyer v. Shroyer,* 425 S.W.2d 214, 220[6] (Mo.1968).

"The question of whether there was a legal 'delivery' depends on the peculiar facts of each case ... and all the relevant facts and circumstances shown in evidence should be considered in determining this question...." *Carr v. Lincoln,* 293 S.W.2d 396, 401[5] (Mo.1956). "Plaintiffs had the burden of establishing their claim of title which was dependent on an alleged conveyance to them. The delivery of the conveyance was disputed. A party claiming title under a deed is bound to prove its delivery because delivery is essential to a deed's validity." *Reasor v. Marshall,* 359 Mo. 130, 142, 221 S.W.2d 111, 116[11, 12] (1949). To similar effect see *Meadows v. Brich,* supra, at 260[10].

There is little, if any, dispute with regard to the facts on which hinges the issue of delivery or non-delivery of the 1975 deed. Several years prior to November 1975 Arthur had conveyed another 160-acre farm, adjacent to the one here in dispute, to Roy. Arthur had stated on several previous occasions that he intended for the disputed farm "to be Mildred's."

In November 1975 plaintiffs Harold and Mildred drove to the farm where Arthur was then living alone. There they met Arthur and Roy, who lived on the adjacent farm, and the four people went to the office of attorney Daniel Wade in Ava, Missouri.

During the "15 to 30 minutes" they were at Wade's office, Wade prepared a deed to the land, using a description the four laymen had first obtained at the recorder's office. In the presence of attorney Wade and his three companions, Arthur signed and acknowledged the deed which contained a description of the farm and named the plaintiffs as grantees. After Wade had "notarized" the deed, Wade placed it in an envelope and gave it to grantee Mildred in the presence of the other people, including Arthur. It is a reasonable, if not inescapable, inference from the evidence that Wade's act of handing the deed to Mildred was done with the knowledge and consent of Arthur.

Although Harold, Mildred and Roy all testified at the trial, there was no testimony concerning any specific statement made by Arthur during the conference in the attorney's office or indeed on that day.

After Mildred was in physical possession of the deed, Roy suggested to Mildred that the deed be left with Roy to be put by him in a safety deposit box. Mildred agreed and handed the deed to Roy. Mildred and Roy decided that the deed would not be recorded. Mildred testified that Roy "was supposed to keep the deed in a lock box and the deed was supposed to be returned" to her at Arthur's death.

Neither of the grantees, Harold and Mildred, saw the deed again. Roy testified that he placed the deed in his, Roy's, safety deposit box, to which Arthur had no access. Indeed it was Roy's testimony that Arthur did not know where the deed was. In 1978 Roy burned the 1975 deed shortly before Arthur's death and after the execution of the defective 1978 deed. Mildred did not learn of the destruction of the 1975 deed nor the existence of the 1978 deed until three weeks after Arthur's funeral.

On cross-examination by defense counsel, Harold testified that attorney Wade made the statement "that if [Arthur] trusted [Mildred] that she could always reconvey the property." There was conversation between Mildred and Roy that Arthur "might need the property—not that he would need

it—if he got badly sick, that he would need to borrow against it."

Mildred testified that "the purpose in Roy having the deed was in case Dad did have some kind of sickness or had a need of borrowing money against the place" but "that was never necessary." Mildred also testified that attorney Wade told her "if Arthur ever really needed it, you could convey it back." Mildred admitted that on her deposition she had given an affirmative answer to the question, "So you realized your father still had control of the property?" Explaining her foregoing answer the witness said, "I realized he could borrow money on the property if he needed to before his death. But it was also understood I was to receive the deed at my father's death. It was to be recorded."

Roy testified that the decision not to record the deed was made by Mildred and Roy and that decision had been made "without talking to Dad." Roy said, "My intentions at that time [were] to bring the deed back at Dad's passing away." Asked whether Arthur had instructed the witness on what to do with the deed, Roy replied, "I don't know as he really said."

In November 1975, when the events in the attorney's office occurred, plaintiffs Harold and Mildred were in the process of moving to Arkansas where Harold was employed. Arthur continued to live alone on the farm for a few months, but his health failed and thereafter he made his home with Roy except for the last summer of his life which he spent with the plaintiffs in Arkansas. The plaintiffs did not occupy the farm or make improvements on it between November 1975 and the date of Arthur's death three years later. Although plaintiffs admitted they did not pay taxes on the farm, the record does not show who paid the taxes during that period or even if they were paid at all.

Significantly, after the conference in the attorney's office Arthur did not incur substantial medical expenses. No need arose for the farm to be mortgaged to obtain funds for Arthur's expenses, medical or otherwise, and it was not mortgaged.

In their attack upon the ruling of the trial court that the 1975 deed was not delivered, Harold and Mildred argue that delivery was accomplished when the deed, signed and acknowledged by Arthur, was handed by attorney Wade to Mildred in the presence of Arthur with the latter's knowledge and consent. Their brief states: "There was absolutely no evidence that the grantor, Arthur, participated in any of the discussions between Mildred and Roy concerning the handling of the deed which had been given to her by Arthur. Arthur, after executing the deed, allowed it to be handed to Mildred and at no time made any request that it be redelivered to either himself or any other person. The decision not to record the deed was reached between Mildred and Roy. These discussions were all had after the execution and delivery of the deed to Mildred. The deed was then placed in a safety deposit box to which Arthur did *not* have access, except through Roy. Thus, it is clear that from the time Arthur executed the deed which conveyed the property in question to Harold and Mildred, he had no further control or dominion over the deed."

The foregoing argument may not be totally lacking in its appeal but its soundness need not be determined because, for reasons to be stated, this court holds, as Harold and Mildred alternatively contend, that there was a valid conditional delivery of the 1975 deed which, upon satisfaction of the condition, ripened into an absolute delivery.

Seeking to uphold the ruling of the trial court that the 1975 deed was not delivered, Roy argues that the circumstances demonstrate that Arthur "intended to retain control" of the deed and "intended to be able to recall the deed if necessary." Roy points to the testimony of Harold that Harold was aware that "if Arthur wanted to mortgage the farm, he had the right to do so." He also points to the testimony of Mildred that she realized that her father "still had control of the property." Of course, if Roy's position is correct, the trip to attorney Wade's office and the proceedings which occurred there were a total waste of time.

■ It has long been the law in Missouri that the delivery of a deed by the grantor to a third person with *unconditional* instructions that it be held by him and delivered to the grantee upon the grantor's death is a valid delivery, if there is no reservation by the grantor of dominion over the deed. *Haer v. Christmas,* supra, at 68; *Blackiston v. Russell,* 328 Mo. 1164, 1173, 44 S.W.2d 22, 26 (1931). In *Haer* the court said, "[T]he requirement that there be an intention on the part of the grantor to convey to the grantee a present interest in the land does not mean that he must intend to transfer the present right of possession."

■ It is also true that a deed's delivery, if otherwise effective, is not impaired by a contemporaneous agreement between the grantor and the grantee that the deed not be recorded until after the death of grantor, *Zumwalt v. Forbis,* 349 Mo. 752, 163 S.W.2d 574, 577 (1942); *Headington v. Woodward,* 214 S.W. 963, 965[2] (Mo.1919), and this is so "even if the parties entertained the erroneous idea that it would not be in force until recorded." III American Law of Property § 12.66 (A.J. Casner ed. 1952).

■ "Delivery" of a deed is a legal concept which is not to be equated with the mere physical handing of the document by the grantor to the grantee. That physical act, however, if it takes place, is a circumstance to be considered in determining whether the grantor intended to convey a present interest. The circumstances may be such that there is delivery without physical transfer, *Wilkie v. Elmore,* 395 S.W.2d 168 (Mo.1965), or there may be no delivery although a physical transfer took place, *Bunn v. Stewart,* 183 Mo. 375, 81 S.W. 1091 (1904). It has been said, however, "The least questionable proof [of delivery] is a manual transfer of the instrument by the grantor to the grantee, requiring strong evidence to overcome it." III American Law of Property § 12.64 (A.J. Casner ed. 1952). See 56 A.L.R. 746 and 141 A.L.R. 305 (Conclusiveness of manual delivery of deed to grantee as an effective legal delivery.)

The rule in the majority of jurisdictions is "that delivery to the *grantee* of a deed absolute on its face passes title though the grantor, by an oral condition, wishes to postpone its operative effect." Thompson on Real Property (1963 Rep.), Vol. 8, § 4234, p. 71. To similar effect see 26 C.J.S. Deeds § 48, pp. 704–705; 30A C.J.S. Escrows § 7, p. 982; Williston on Contracts, Third Ed., Vol. I, § 212, p. 783; 23 Am. Jur.2d Deeds § 92, p. 142. Some Missouri cases have alluded to the rule. *Commerce Trust Co. v. White,* 172 Mo.App. 537, 158 S.W. 457, 460[8] (1913); *Whelan v. Tobener,* 71 Mo.App. 361, 370 (1897).

It is unnecessary to decide whether the foregoing rule would have come into operation if Roy had not been present and the Mildred-Roy conversation had taken place between Mildred and Arthur. This opinion assumes, arguendo, that Arthur, by his physical presence, was a participant in the Mildred-Roy conversation. In other words, whether or not it is necessary for this court to view the evidence as showing a conditional delivery of the deed by Arthur to *Roy,* the evidence will be so viewed. From Roy's standpoint, such is the most favorable view.

The conversation in the attorney's office indicates that it was the intention of Roy and Mildred (and, arguendo, Arthur) that Mildred (and her husband) receive title to the farm if, during the balance of his life, Arthur escaped serious illness necessitating major medical expenses. That view of the evidence may involve a condition precedent to a posthumous delivery. On the other hand the intention of the parties may be viewed as contemplating a present passage to the grantees of an interest subject to defeasance if Arthur incurred major medical expenses, a condition subsequent. The difference, however theoretical, between these views becomes academic because the fact is that the condition precedent was satisfied and the condition subsequent did not occur.

■ If the act of Mildred in handing the deed to Roy be deemed equivalent to the act of Arthur in handing the deed to Roy,

subject to the content of the Mildred-Roy conversation, the transaction may properly be viewed as "a conditional delivery" or as a delivery "in escrow." The general topic of conditional delivery of a deed has been the subject of considerable discussion.[1]

An excellent treatment of the subject of conditional delivery of a deed is found in Tiffany, Real Property, Third Ed., Vol. IV, § 1048–1054, p. 418, et seq. Certain principles stated in that source are applicable here and are set forth in the next six paragraphs.

"The delivery of a conveyance, or of any other instrument which takes effect by delivery, may be conditioned upon the performance of some act or the occurrence of some event. . . . A conditional delivery is usually referred to as to delivery 'in escrow,' or it is said that an instrument conditionally delivered is delivered as an 'escrow.' . . . [A]n instrument in the form of a deed, which is conditionally delivered, is delivered as a deed, an instrument capable of legal operation, and not as a mere piece of paper. Otherwise it could not become legally operative upon the satisfaction of the condition. In the case of a conditional delivery, a delivery in escrow, the maker of the instrument in effect says: 'I now deliver this as my act and deed, provided such a condition is satisfied,'" . . . § 1048.

"The manual transfer of the instrument, which is ordinarily assumed to be essential to a conditional delivery, must, according to a great majority of the authorities in this country, be to a person other than the grantee, it being held that if the grantor, intending to make a conditional delivery, hands the instrument to the grantee, there is necessarily an absolute delivery." § 1049.

"The question whether, when the instrument has been handed by the grantor to a third person, it is to be regarded as having been conditionally delivered, is to be determined with reference to the language used by him, construed in the light of the surrounding circumstances, as showing the grantor's intention. That is, as absolute delivery is a question of the grantor's intention, so conditional delivery is a question of his intention. Such a manual transfer of the instrument to a third person is compatible with either an absolute delivery, a conditional delivery, or no delivery whatsoever; that is, the grantor may hand the instrument to a third person with the intention that it become immediately operative, that it become operative in case a certain condition is satisfied, or with no intention as to its becoming operative. A conditional delivery differs from an absolute delivery merely in the fact that it is subject to a condition, and it is in its nature as final as an absolute delivery. For this reason it is difficult to yield our assent to occasional decisions and dicta that the grantor may, when handing the instrument to a third person by way of conditional delivery, retain a right of revocation, so-called, by an express statement that the instrument is not to become operative even on satisfaction of the condition if he, the grantor, in the meantime indicates a desire to the contrary. It is recognized that, after making a conditional delivery without expressly retaining any such right of control, the grantor cannot prevent the instrument from becoming operative upon the satisfaction of the condition, and there is no reason why he should be allowed to retain a right of control by an express statement to that effect while making delivery." . . . § 1050.[2]

1. "Some Problems Involved in Conditional Deliveries of Deeds," by Glenn A. McCleary, 43 Univ. of Mo. Bull.L.Ser. 5 (1931). "Delivery in Escrow," 29 Yale L.J. 831 (1920); "Conditional Deliveries of Deeds of Land," 26 Harv.Law Rev. 565 (1913); "Conditional Delivery of Deeds," 14 Columbia Law Rev. 389 (1914); "The Conditional Delivery of Deeds," 30 Columbia Law Rev. 1145 (1930); Thompson on Real Property (1963 Rep.), Vol. 8, § 4245, et

seq., p. 143; III American Law of Property § 12.67 (A.J. Casner ed. 1952).

2. "Sometimes the contingency is not the ultimate death of the grantor but his death by a certain date, or prior to that of the grantee, or if he fails to recover from a present illness or from an operation about to be performed. A number of courts have held that under such circumstances the grantor has thus reserved a conditional right of recall in the event that he

"When the conditions of the escrow have been met, the depository becomes the agent of each party under a duty to deliver, so that, if the depository fails to deliver when he should, the delivery is held to have legally occurred." § 1051.

"It has been asserted in a number of cases that there can be no delivery in escrow unless it takes place as the result of an actual contract of sale between the parties to the instrument, as, for instance, when the delivery is conditioned upon the payment by the grantee of an agreed price for the land.... The idea at the basis of this asserted requirement of an auxiliary contract in connection with conditional delivery appears to be that, in the absence of such a contract, the grantor can control the operation of the instrument, that, in other words, he may revoke the delivery. Such an idea is, it is conceived, absolutely erroneous, and involves an entire misapprehension of the nature of conditional delivery. After the delivery of the instrument of conveyance, whether absolutely or conditionally, the parties stand in the relation, not of vendor and purchaser under a contract but of grantor and grantee under a conveyance, and consequently the question of the existence of a valid contract of sale is immaterial. There is no more reason for regarding the conditional delivery of a conveyance as invalid in the absence of an enforceable contract of sale than for so regarding an absolute delivery.... [A] valid conditional delivery may occur in connection with transactions not involving a sale, in the case of a gift, for instance. There can obviously be no contract of sale in such case to support the validity of the delivery, yet if a contract of sale is necessary to support a conditional delivery in the one case, how can such a delivery be valid without a contract of sale in the other? ... The idea

that, in the absence of a contract, the grantor can recall the deed is, as before remarked, without any support in principle, and there is, it is submitted, no more necessity of a contract in regard to its custody when the delivery is conditional than when it is unconditional.... § 1052.[3]

"Properly considered, conditional delivery, or delivery in escrow, is the same as any other delivery, except that it is subject to the satisfaction of a condition. After the condition has been satisfied, there is an operative conveyance which is to be regarded as having been delivered at the time of its conditional delivery, for the obvious reason that it was then, and then only, that it was delivered, though the ownership cannot be regarded as having passed until it actually did pass, that is, until the satisfaction of the condition. The grantor in effect says, at the time of handing the instrument to the intended custodian, 'I now deliver this as my deed provided such a thing is done or occurs.' " ... § 1053.

In *Seibel v. Higham,* 216 Mo. 121, 115 S.W. 987, 990 (1908), the court said: " 'The distinctive feature of an escrow is the delivery of a deed to a third person to await the performance of some condition, whereupon the deed is to be delivered to the grantee and the title is to pass.' ... In such case it is not a deed until the condition is performed. The depositary of an escrow is sometimes spoken of as the agent of the grantor and sometimes as the agent of both parties, and whilst that may be correct, in a limited sense, yet strictly speaking he is not an agent at all; he is a trustee of an express trust, with duties to perform for each which neither can forbid without the consent of the other. If he were the agent of the grantor, his agency would cease on

---

survives and that accordingly the transaction lacks the necessary intent to convey a present interest by an unconditional first delivery. Walsh makes the logical comment that the decisions in these cases confuse an allowable reservation of a right of recall if a contingent event should take place with the unallowable absolute right of recall. He contends that there is no more retention of control by the grantor

in these cases than in any other case of accepted delivery in escrow and that the courts have so held in decisions involving some conditional rights of recall." III American Law of Property § 12.67 (A.J. Casner ed. 1952).

3. For similar views see "Is a contract necessary to create an effective escrow?" 16 Mich.Law Rev. 569 (1918).

the grantor's death, and he would have no authority to receive the purchase money from the grantee and deliver the deed. But the death of the grantor does not annul the depositary's authority to do what he was appointed to do, and it does not impair the right of the grantee to perform the condition and take down the deed."

In *Donnelly v. Robinson*, 406 S.W.2d 595, 598 (Mo.1966), the court said: "[U]pon final delivery by a depository of a deed deposited in escrow the instrument will be treated as relating back to, and taking effect at the time of the original deposit in escrow. This shall apply even though one of the parties to the deed dies before the second delivery. This relation back doctrine has wide and general acceptance. Its roots are ancient for as far back as the Sixteenth Century we find the Perryman's Case, 77 Eng.Rep. 181, 1. c. 183, in which it was said:

"'* * * if a man delivers a writing (d) as an escrow to be his deed on certain conditions to be performed, and afterwards the obligor or obligee dies, and afterwards the condition is performed, the deed is good, for there was *traditio inchoata* in the life of the parties, *sed postea consummata existens* by the performance of the condition takes its effect by force of the first delivery, without any new delivery * * *.'"[4]

■ In light of the foregoing principles this court holds that there was a conditional delivery of the 1975 deed, that the condition was satisfied, and that the 1975 deed was an operative conveyance.

The trial court erred in denying plaintiffs relief on Count I and in finding that the 1975 deed was ineffective for lack of delivery. In all other respects the judgment is affirmed. The judgment is reversed and the cause is remanded for entry of judgment consistent with this opinion.

GREENE, C.J., and TITUS and PREWITT, JJ., concur.

---

4. For a situation which is, of course, distinguishable, but somewhat analogous, see *St. Louis County Nat. Bank v. Fielder*, 364 Mo. 207, 260 S.W.2d 483 (1953), where the court held that a deed conveying realty but reserving to grantor a life estate with power to sell, rent, lease, mortgage or otherwise dispose of the realty during his lifetime, created a defeasible fee in the grantee subject to a life estate in grantor and was not rendered invalid as being testamentary in character by reason of the reservation of an unexercised power to revoke.