Thomas R. **HAMMACK**, as an Individual and as Co–Trustee by and on Behalf of the Beneficiaries of the Hammack Family Farm Trust, Appellant,

v.

**COFFELT LAND TITLE, INC., Respondent.**

No. WD 72477.

Missouri Court of Appeals, Western District.

Sept. 6, 2011.

Charles E. Weedman, Jr., Harrisonville, MO, for Appellant.

Nicholas P. Hillyard, Kansas City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

JAMES EDWARD WELSH, Presiding Judge.

Thomas R. Hammack[1] sued Coffelt Land Title, Inc., for negligence and breach of contract, over its handling of a deed and money received from the sale of certain farm property. The circuit court, after a bench trial, entered judgment in favor of Coffelt Land Title. Thomas Hammack appeals. He asserts that the circuit court erred in finding that the December 3, 1998 general warranty deed executed by Thomas Hammack and his wife and his brother, H. Stanley Hammack, and Stanley's wife was effective to transfer title to the purchasers of the farm property. In particular, he contends that, because the general warranty deed was not delivered into escrow to Coffelt Land Title, the relation back doctrine is not applicable. Further, he claims that, even if the contract was controlling as an escrow agreement, the terms of the contract were not fulfilled. We disagree and affirm the circuit court's judgment.

On February 7, 1997, Stanley Hammack and his wife, Jeannette Hammack, executed a revocable, inter vivos trust denominated the "Stan Hammack Family Revocable Trust Dated 02/07/97" (Family Trust). One of the assets not included in the Family Trust was Stanley Hammack's undivided one-half interest in a 1,040 acre family farm. The other undivided one-half interest in the farm belonged to Stanley Hammack's brother, Thomas Hammack. The Family Trust stated that, in the event Stanley Hammack preceded his wife in death, Stanley Hammack's one-half interest in the 1,040 acre family farm would be conveyed to Hammack Family Farm Trust (Farm Trust) by beneficiary deed upon his

---

1. Thomas Hammack sued individually and as co-trustee and on behalf of the beneficiaries of the Hammack Family Farm Trust.

death.[2] Also, on February 7, 1997, Stanley and Jeannette Hammack executed a beneficiary deed conveying title in Stanley Hammack's one half interest in the farm to the Family Trust upon Stanley Hammack's death.

The Family Trust further provided that, after Stanley Hammack's death, Jeannette Hammack and Thomas Hammack would act as co-trustees of the Farm Trust. According to the Family Trust, income from the Farm Trust was to be paid to Jeannette Hammack during her life, and, upon her death, income from the Farm Trust was to be paid to Thomas Hammack for his remaining life. Then, upon Thomas Hammack's death, the Farm Trust would terminate, and the property would be divided among the children of Thomas Hammack. The Family Trust also stated that the Farm Trust could not be amended or revoked and that the assets could not be withdrawn after the death or incapacity of Stanley Hammack.

On December 3, 1998, Stanley and Jeannette Hammack and Thomas Hammack, and his wife, Janet, executed a contract to sell the 1,040 acre family farm to P. David Perkins and David D. Davenport. On that same day, Stanley, Jeannette, Thomas, and Janet Hammack executed in their individual capacities a General Warranty Deed transferring the title of the family farm to Perkins and Davenport. The General Warranty Deed was signed by the parties at Coffelt Land Title's Harrisonville office. Thomas Hammack acknowledged that he was not actively involved in the sale of the family farm and that his brother, Stanley

Hammack, handled everything. He stated that he never discussed an escrow with Coffelt Land Title. or with his brother. Thomas Hammack said that on December 3, 1998, he was "in and out" of Coffelt Land Title's office to sign the documents for the sale of the farm.

The contract for sale provided that the down payment would be held in escrow and that the deed would be delivered to the purchasers at closing. It further provided that the $390,000 purchase price would be payable in the form of a $10,000 down payment to be held in escrow with Coffelt Land Title and that the balance of $380,000 would be paid in cash upon closing. The contract called for closing the last five days of 1998 or within the first five days of 1999 at Coffelt Land Title's office "or at such other time and place as the parties may mutually agree." However, the second five was crossed out and "15" was handwritten in and initialed next to it. Further, the contract provided that at closing "the warranty deed shall be delivered and the payment of the purchase price in accordance with the terms [of the contract] shall be completed."

No written escrow agreement was prepared or executed by the parties. David Coffelt, Chairman of Coffelt Land Title, testified that his company generally used escrow agreements but that it did not in this case because the closing was based on the terms of the agreement.[3] When the contract and general warranty deed were signed by the parties, the documents were left with Coffelt Land Title, and Cof-

---

**2.** Although the Family Trust said that it was Stanley Hammack's intention to convey title to the property to the Farm Trust by beneficiary deed, the land would pass first to the Family Trust and from there to the Farm Trust. Indeed, Stanley and Jeannette Hammack executed a beneficiary deed conveying title of Stanley Hammack's interest in the property to the Family Trust upon Stanley Hammack's death.

**3.** In a judge-tried case, we view the evidence in the light most favorable to the judgment. *Rissler v. Heinzler,* 316 S.W.3d 533, 536 (Mo. App.2010).

felt Land Title placed the items in a closing/escrow file.

On December 6, 1998, Stanley Hammack died.

On January 11, 1999, after Stanley Hammack's death, Coffelt Land Title received two checks, dated December 5, 1998, totaling $10,000 from Perkins and Davenport. On February 1, 1999, Thomas and Janet Hammack attended the closing at Coffelt Land Title's office.[4] At that time, they signed a general warranty deed conveying a one-half interest in the farm to Perkins and Davenport. Jeannette Hammack also executed a trustee's deed conveying an undivided one-half interest in the 1,040 acre farm to Perkins and Davenport. It was these deeds, rather than the general warranty deed executed on December 3, 1998,[5] which Coffelt Land Title used at the time of closing. A settlement statement was also signed by Thomas Hammack, Janet Hammack and Jeannette Hammack at the closing. Perkins and Davenport tendered payment of $380,000, and the sale of the farm was closed. Coffelt Land Title issued a check from the proceeds of the sale to Jeannette Hammack for $176,725.69 and a check to Thomas and Janet Hammack in that same amount.

At the time of the closing, Thomas Hammack was unaware of any trusts or a beneficiary deed set up and executed by Stanley Hammack and Jeannette Hammack to transfer their interest in the farm to a trust. However, approximately two weeks after closing, Thomas Hammack became aware of the trusts, the beneficiary deed, and his role as co-trustee of one of the trusts when he received a telephone call from Jeannette Hammack. The beneficiary deed, which attempted to convey Stanley Hammack and Jeannette Hammack's interest in the farm to the Family Trust upon Stanley Hammack's death, had been recorded in February 1997.

After learning of the beneficiary deed and the trusts, Thomas Hammack made a demand upon Coffelt Land Title regarding the disbursement of the sale proceeds. He also made a demand upon Jeannette Hammack to return her portion of the sale proceeds to Thomas Hammack and herself, as co-trustees of the Farm Trust. Coffelt Land Titled refused the demand. Jeannette Hammack did not return the money, but she has not been sued.

Thereafter, on January 12, 2004, Thomas Hammack, individually and on behalf of himself and the other beneficiaries of the Farm Trust filed a two count Petition for Damages in the circuit court against Coffelt Land Title. He filed an amended petition on May 4, 2009. In Count I, Thomas Hammack asserted a claim based on negligence, alleging that Coffelt Land Title had breached its duty of care, and, in count II, Thomas Hammack alleged that Coffelt Land Title breached the terms of a contract. Both counts were premised on the assertion that Coffelt Land Title issued a check to Jeannette Hammack in her personal capacity instead of as trustee for the Farm Trust when the real estate transaction closed.[6]

---

4. Thomas Hammack testified that the closing date was "fluid," and that it kept getting moved back. He said that he had no objection to the February closing date.

5. The general warranty deed dated December 3, 1998, was recorded in the Recorders Office in St. Clair County, Missouri, on July 18, 2007.

6. Thomas Hammack filed a motion for summary judgment, which was granted by the circuit court. After a hearing on the damages, the circuit court entered judgment against Coffelt Land Title in the amount of $176,726.50. Both parties appealed to this court. On March 17, 2009, this court reversed the circuit court's grant of summary judgment, finding that genuine issues of fact

On November 4 and 5, 2009, the circuit court held a bench trial. On March 1, 2010, the circuit court entered judgment in favor of Coffelt Land Title. The circuit court found that the circumstances and conduct of the parties supported a finding that the general warranty deed of December 3, 1998, was placed in escrow. According to the circuit court, the circumstances demonstrated an intent by the grantors to unconditionally turn over the warranty deed upon the buyers' performance of paying the amounts due at closing. The circuit court found that the warranty deed executed on December 3, 1998, was delivered to Coffelt Land Title for delivery to the purchasers upon performance of the conditions of the contract. Therefore, the circuit court concluded that, under the relation-back doctrine, the transfer would be deemed to have occurred on the date of the original delivery of the deed to Coffelt Land Title, December 3, 1998, even though the deed remained in the custody of Coffelt Land Title until its recording in 2007. The court further found that an escrow agent owes a fiduciary duty to the parties for whom he holds property. According to the circuit court, Coffelt Land Title was not holding property for the Family Trust or the Farm Trust and owed no duty to the trusts. Consequently, the court entered judgment in favor of Coffelt Land Title and against Thomas Hammack. Thomas Hammack appeals.

Review of this judge tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

remained regarding what duties Coffelt Land Title owed to Thomas Hammack and whether those duties were breached. *Hammack v.*

In his only point on appeal, Thomas Hammack asserts that the circuit court erred in finding that the December 3, 1998 general warranty deed was effective to transfer title to the purchasers of the farm property. In particular, he contends that, because the general warranty deed was not delivered into escrow to Coffelt Land Title, the relation back doctrine is not applicable. Further, he claims that even if the contract was controlling as an escrow agreement, the terms of the contract were not fulfilled. He, therefore, asserts that, upon Stanley Hammack's death on December 6, 1998, the recorded 1997 beneficiary deed vested title to the property in the Farm Trust via the Family Trust. We disagree.

For a deed " 'to be operative as a transfer of the ownership of land' " it must be delivered. *Turner v. Mallernee*, 640 S.W.2d 517, 518 (Mo.App.1982) (citation omitted). Delivery gives the deed force and effect and " 'signifies that all dominion and control over the deed is passed from the grantor to the grantee, or to someone for him, with the intention of presently transferring the ownership of land.' " *Id.* (citation omitted). "The intent to deliver may be manifested by words or acts or both." *Id.* at 519.

The controlling element in determining whether there was delivery of a deed is the intention of the parties. *Shroyer v. Shroyer*, 425 S.W.2d 214, 219 (Mo.1968). "The vital inquiry with respect to the grantor is whether [he or] she intended a complete transfer; whether [he or she] parted with dominion over the instrument with the intention of relinquishing all dominion and control over the

*Coffelt Land Title, Inc.*, 284 S.W.3d 175 (Mo. App.2009).

conveyance and of making it presently effective and operative as a conveyance of the title to the land." *Id.* "A delivery to a third party, to be held by that party for delivery to the grantee ... operates as a valid delivery when there is no reservation in the deed nor any right of control over the instrument retained by the grantor." *Pipes v. Sevier,* 694 S.W.2d 918, 926 (Mo. App.1985). "In such case, the deed in the hands of the custodian has the same effect as if it had been manually delivered by the grantor to the grantee." *Id.*

 A conditional delivery, or a delivery "in escrow," means that delivery is "conditioned upon the performance of some act or the occurrence of some event." *Turner,* 640 S.W.2d at 522. Delivery in escrow is the same as any other delivery "except that it is subject to the satisfaction of a condition." *Id.* at 523. " 'The distinctive feature of an escrow is the delivery of a deed to a third person to await the performance of some condition, whereupon the deed is to be delivered to the grantee and the title is to pass. In such case, it is not a deed until the condition is performed.' " *Morris v. Davis,* 334 Mo. 411, 66 S.W.2d 883, 888 (1933) (citation omitted). As the *Morris* court explained:

> "The depositary of an escrow is sometimes spoken of as the agent of the grantor and sometimes as the agent of both parties, and whilst that may be correct, in a limited sense, yet strictly speaking he is not an agent at all; he is a trustee of an express trust, with duties to perform for each which neither can forbid without the consent of the other."

*Id.* (citation omitted).

Missouri courts have recognized that an escrow agreement may be based on an oral agreement. In *State Resources Corporation v. Lawyers Title Insurance Corporation,* 224 S.W.3d 39, 48 n. 13 (Mo.App. 2007), the court noted that an escrow agent's duty arises from a written or oral contract. Additionally, in *Boatmen's National Bank of St. Louis v. Dandy,* 804 S.W.2d 783 (Mo.App.1990), the court recognized that a transaction may be closed through an escrow agent with no written escrow agreement.

David Coffelt testified at trial that he served as the escrow agent in this case and that the general warranty deed executed on December 3, 1998, was held in escrow. He said that the contract and the deed were placed in a closing or escrow file and that closing was governed by the terms of the contract. He further said that at closing, upon performance of the conditions of the contract, the deed was to be turned over and the monies disbursed. Coffelt said there was not a written escrow agreement for this transaction because "we were closing under the terms of the contract."

Although no written escrow agreement existed in this case, the finder of fact could certainly find that the actions of Stanley and Jeannette Hammack and Thomas and Janet Hammack established that the December 3, 1998 general warranty deed was placed in escrow with Coffelt Land Title. On December 3, 1998, Stanley and Jeannette Hammack and Thomas and Janet Hammack went to Coffelt Land Title's office and signed the sale contract and general warranty deed. The contract that the parties signed provided that the down payment would be held in escrow and that the warranty deed would be delivered to the purchasers at the closing. It further provided that the $390,000 purchase price would be paid in the form of a $10,000 down payment to be held in escrow with Coffelt Land Title and that the balance would be paid in cash upon closing. Coffelt Land Title then placed the contract and warranty deed in an escrow or closing file, and all of the Hammacks left the warranty deed in Coffelt Land Title's custody. Thereafter, the purchasers deposit-

ed the $10,000 down payment with Coffelt Land Title, and, at the time of closing, the purchasers provided the remaining amounts due.

These actions by the parties demonstrated an intent to part with dominion over the warranty deed "with the intention of relinquishing all dominion and control over the conveyance and of making it presently effective and operative as a conveyance of the title to the land." *Shroyer*, 425 S.W.2d at 219. The Hammacks made a delivery to a third party—Coffelt Land Title—and intended that the warranty deed be held by Coffelt Land Title for delivery to the purchasers. The Hammacks did not provide for any "reservation in the deed nor retain any right of control" of the warranty deed. *Pipes*, 694 S.W.2d at 926. Thus, the deed in the hands of Coffelt Land Title had the same effect as if it had been manually delivered by the Hammacks to the purchasers. *Id.* The circuit court, therefore, did not err in concluding that the December 3, 1998 general warranty deed was placed in escrow with Coffelt Land Title.

"[W]here a deed is transferred to an escrow agent for delivery to a transferee upon the transferee's fulfillment of speci-

fied conditions (frequently payment of the purchase price), when those conditions are satisfied, the transfer is deemed to 'relate back' to the date on which the transferor delivered the deed to the escrow agent." *Hammack v. Coffelt Land Title, Inc.*, 284 S.W.3d 175, 180 (Mo.App.2009) (Ahuja, J., concurring); *see also Donnelly v. Robinson*, 406 S.W.2d 595, 598 (Mo.1966) and *Turner*, 640 S.W.2d at 524. "[T]his rule applies even where the transferor dies between the delivery of the deed into escrow and the ultimate consummation of the transaction." *Hammack*, 284 S.W.3d at 180 (Ahuja, J., concurring); *Donnelly*, 406 S.W.2d at 598; and *Turner*, 640 S.W.2d at 524.

As we previously concluded, the general warranty deed executed on December 3, 1998, was delivered to Coffelt Land Title for delivery to the purchasers upon performance of the conditions of the contract (payment of the purchase price).[7] Thus, under the relation back doctrine, the transfer of the deed would be deemed to have occurred on the date of the original delivery of the warranty deed to Coffelt Land Title—that is, December 3, 1998. The fact that this deed was not recorded before the death of Stanley Hammack is of

---

7. Thomas Hammack contends that the conditions of the contract were not satisfied. In particular, he claims that closing did not occur within the timeframe set forth in the contract and the buyers did not pay the down payment in the time frame required by the contract. Thomas Hammack, however, testified that the closing date was "fluid" and that it kept getting moved back. He also said that he had no objection to the February closing date. The fact of the matter is that the down payment was paid and the closing occurred. Such renders any complaints that Thomas Hammack has about the untimely performance of these conditions inconsequential. Thomas Hammack relies on *Seibel v. Higham*, 216 Mo. 121, 115 S.W. 987 (1908). In *Seibel*, a real estate contract had been placed in escrow. *Id.* at 989. The buyers had a set timeframe within which they could choose to

pay the purchase price and buy the property. *Id.* at 990. After the deed was placed in escrow, the grantor died. *Id.* The buyers failed to pay the purchase money within the timeframe set forth in the contract. *Id.* The *Seibel* court found that, because the buyers failed to satisfy the conditions of the contract (paying the purchase money within the timeframe set forth in the contract), the deed "lost its validity" and became "a dead instrument." *Id.* at 990. Unlike our case, the buyers in *Seibel* "declined to avail themselves of their privilege to purchase and allowed the option to expire." *Id.* In our case, the buyers availed themselves of the privilege to purchase and the transaction closed. Thomas Hammack seeks to set aside a closing that had actually occurred. *Seibel* is no authority for "unclosing" a real estate transaction already completed.

no consequence. If a deed's delivery is effective, it is not impaired by the deed's recording after the death of the grantor. *Turner*, 640 S.W.2d at 521. Recording has no effect on the validity of the transfer between the parties but functions only as notice to non-parties.

Thus, because a beneficiary under a beneficiary deed has no rights in the property prior to the death of the owner the property (section 461.031.1, RSMo 2000), the beneficiary deed could be revoked or changed in whole or in part during the lifetime of the owner. § 461.033.1, RSMo 2000. A transfer during the owner's lifetime of the owner's interest in the property terminates the beneficiary designation with respect to the property transferred. § 461.033.5, RSMo 2000. Therefore, the beneficiary deed, that was executed by Stanley and Jeannette Hammack on February 7, 1997, and that conveyed title in Stanley Hammack's one half interest in the farm to the Farm Trust via the Family Trust, was terminated effective December 3, 1998, when Stanley and Jeannette Hammack and Thomas and Janet Hammack transferred title by the general warranty deed held in escrow by Coffelt Land Title. Escrow of the December 3, 1998 general warranty deed, which occurred before Stanley Hammack's death, terminated the beneficiary deed in accordance with section 461.033.5.

We acknowledge that the death of Stanley Hammack put this case in a unique circumstance. Had the parties not made a conditional delivery, or a delivery "in escrow," of the general warranty deed, the beneficiary deed would have conveyed Stanley Hammack's interest in the property to the Farm Trust via the Family Trust

by operation of law. Indeed, § 461.025.1, RSMo 2000 says,

> A deed that conveys an interest in real property to a grantee designated by the owner, that expressly states that the deed is not to take effect until the death of the owner, transfers the interest provided to the designated grantee beneficiary, effective on death of the owner, if the deed is executed and filed of record with the recorder of deeds in the city or county or counties in which the real property is situated prior to the death of the owner. A beneficiary deed need not be supported by consideration or be delivered to the grantee beneficiary. A beneficiary deed may be used to transfer an interest in real property to a trust estate, regardless of such trust's revocability.

But, section 461.025.2 also recognizes that nothing in section 461.025 invalidates "any deed, otherwise effective by law to convey title to the interest and estates therein provided, that is not recorded until after the death of the owner."[8] In this case, the conditional delivery of the general warranty deed to Coffelt Land Title under the relation back doctrine conveyed title to the farm property effective December 3, 1998, three days prior to the death of Stanley Hammack which would have triggered the transfer to the Farm Trust via the Family Trust by operation of law pursuant to the beneficiary deed.

Thomas Hammack makes much of the fact that the December 3, 1998 general warranty deed was not the deed used to close the sale of the property. He notes that, after Stanley Hammack's death, new deeds were executed by the remaining parties on February 1, 1999, and those

---

8. In its entirety, section 461.025.2 provides:

This section does not preclude other methods of conveyancing that are permitted by law and that have the effect of postponing enjoyment of an interest in real proper-

ty until the death of the owner. This section does not invalidate any deed, otherwise effective by law to convey title to the interest and estates therein provided, that is not recorded until after the death of the owner.

deeds were used to close the transaction. In particular, Thomas and Janet Hammack signed a general warranty deed conveying a one-half interest in the farm to Perkins and Davenport, and Jeannette Hammack executed a trustee's deed conveying an undivided one-half interest in the farm to Perkins and Davenport. Thomas Hammack asserts, therefore, that the December 3, 1998 warranty deed was abandoned. Thomas Hammack, however, fails to appreciate the fact that there was nothing for him and his wife and Jeannette Hammack to convey on February 1, 1999, because on December 3, 1998, Stanley and Jeannette Hammack and Thomas and Janet Hammack transferred title by the general warranty deed held in escrow by Coffelt Land Title. *Turner*, 640 S.W.2d at 522.

We, therefore, affirm the circuit court's judgment.

All concur.