

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| DEBRY LA NEAR, | ) | ED102468 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | 0911-CV08572-01 |
| | ) | |
| CITIMORTGAGE, INC., et al., | ) | Honorable Richard K. Zerr |
| | ) | |
| Respondents. | ) | Filed: January 5, 2016 |

## Introduction

Debry La Near (La Near) appeals the trial court's judgment finding that her ownership of certain property was subject to deeds of trust held by CitiMortgage, St. Charles Mortgage Company, and Principal Residential Mortgage, Inc., (Respondents). We affirm.

## Background

This is the second time this case is before this Court on appeal. In 2009, La Near originated an action for partition and quiet title regarding real property located in St. Charles, Missouri (the Property), against CitiMortgage, St. Charles Mortgage Company (predecessor in interest to CitiMortgage), and Principal Residential Mortgage, Inc. (Principal Mortgage) (collectively, Respondents). The trial court dismissed La Near's

claim for partition and granted summary judgment in favor of Respondents regarding La Near's request to quiet title.

La Near appealed the judgment to this Court. La Near v. CitiMortgage, Inc., 364 S.W.3d 236 (Mo. App. E.D. 2012) (La Near I). This Court noted that the following three events occurred on June 30, 2004: (1) the original owners of the Property executed a general warranty deed conveying the Property to Kirby Warren (Warren); (2) Warren executed a quitclaim deed conveying the Property to himself and La Near; and (3) Warren executed two promissory notes and two deeds of trust securing the notes in favor of St. Charles Mortgage Company and Principal Mortgage. Id. at 237. Warren died in 2009. La Near's lawsuit arose because she subsequently attempted to refinance the debt on the Property, which Respondents would not allow because she was not a party to the promissory notes or deeds of trust.

This Court found documents in evidence purporting to give interests in the Property to both La Near (by quitclaim deed) and Respondents (by promissory notes and deeds of trust), but the issue was which interest was superior. Id. at 239-40. This Court noted that a deed takes effect and transfers title at the time of *delivery*, rather than at the time of execution or subsequent recordation. Id. at 240. This Court further found the record was unclear as to the time of delivery of each party's interest, and thus summary judgment was inappropriate. Id. at 241. This Court reversed and remanded to the trial court to determine when each party's interest in the Property arose. Id.

The trial court conducted a bench trial on this issue. The evidence presented included La Near's testimony regarding the events on June 30, 2004, as well as expert testimony by Respondents regarding the process for real estate escrow closings. La Near

2

testified that it was the intent of herself and Warren to purchase the Property together on June 30, 2004, but shortly before the closing, they learned that the banks would not allow La Near to be a joint borrower. La Near and Warren decided that Warren would complete the transaction as a sole owner, and then he would execute a quitclaim deed to himself and La Near as joint tenants in order to give La Near an interest in the Property. La Near also provided Warren a cashier's check in the amount of $19,000 for the purchase of the Property.

The trial court found that an escrow closing took place on June 30, 2004, at the office of the escrow agent (Agent). The original owners of the Property appeared at the Agent's office in the morning and executed a general warranty deed conveying the Property to Warren. Shortly after that, La Near provided Warren the cashier's check, and Warren executed the quitclaim deed conveying the Property to himself and La Near as joint tenants. Finally, sometime in the afternoon, Warren executed the promissory notes and deeds of trust in favor of St. Charles Mortgage Company and Principal Mortgage at the Agent's office.

The trial court's judgment concluded with two findings: (1) that title to the Property is vested in La Near, and (2) that ownership of the Property is subject to the two deeds of trust Warren executed on June 30, 2004. La Near appeals the second of these findings.

### Standard of Review

Our review of a court-tried case is governed by the standard set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We will sustain the trial court's

3

judgment "unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Id.

## Discussion

La Near raises three points on appeal. First, she argues the trial court erred in admitting and relying upon Respondents' expert's testimony regarding real estate escrow closings. Next, Points II and III essentially raise the same issue, that the trial court's judgment was unsupported by substantial evidence and erroneously declared and applied the law when it determined the effect of the events that took place at the closing on June 30, 2004. We discuss Points II and III together.

## Point I

La Near argues that the trial court erred in admitting and relying upon the testimony of Respondents' expert, Phillip J. Paster (Paster), because he lacked expertise as well as personal knowledge of the transaction that took place on June 30, 2004. We disagree.

"In a court-tried case, prejudicial or reversible error in the admission or rejection of evidence is not an issue on appeal." Unlimited Equip. Lines, Inc. v. Graphic Arts Centre, Inc., 889 S.W.2d 926, 937 (Mo. App. E.D. 1994) (quoting City of Town & Country v. St. Louis County, 657 S.W.2d 598, 608 (Mo. banc 1983)) (internal quotation omitted). The issue is whether the contested evidence should have been admitted or considered, and then "what the judgment of the court should be, based on a consideration of the competent and admissible evidence." Unlimited Equip. Lines, 889 S.W.2d at 937 (quoting Thau-Nolde, Inc. v. Krause Dental Supply & Gold Co., 518 S.W.2d 5, 9 (Mo. 1974)).

4

Section 490.065, RSMo. (2000), governs the admission of expert testimony: "In any civil action, if . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto . . . ." The decision of whether a witness qualifies as an expert and whether that testimony will assist the trier of fact is a matter within the trial court's discretion, and it will not be disturbed upon appeal absent an abuse of that discretion. Whitnell v. State, 129 S.W.3d 409, 413-14 (Mo App. E.D. 2004).

Here, the record reflects that Paster graduated from Harvard University School of Law and had spent approximately 50 years practicing real estate law in St. Louis. He had been involved in hundreds of real estate closings during that time. The trial court noted that it relied upon Paster's general knowledge of real estate closings, as "a 'horn book' review of the law of real estate transactions, focusing on the concept of the 'opening' and 'breaking' of escrow" as applied to the facts of this case on June 30, 2004.

The trial court did not abuse its discretion in admitting and relying upon this testimony. Often an expert's testimony "is based on facts . . . which expert did not personally observe and of which the expert did not have any personal knowledge." Am. Eagle Waste Indus. v. St. Louis County, Mo., 463 S.W.3d 11, 25 (Mo. App. E.D. 2015). The fact that Paster was not present at the real estate closing here did not preclude his opinion of the legal effect of the undisputed facts regarding the closing. In fact, Section 490.065.3 expressly provides that "[t]he facts . . . in a particular case upon which an expert bases an opinion or inference may be those . . . made known to him at or before the hearing . . . ." Paster provided expertise regarding the process of escrow, and he

5

applied that expertise to the facts supplied to him regarding the events that took place on June 30, 2004. The trial court did not err in relying upon Paster's opinion in making its conclusions. Point denied.

## Points II and III

La Near argues that the trial court erred in determining that the evidence established that her interest in the Property was subject to the deeds of trust. Essentially, she argues the trial court erroneously applied the law of real estate closings to the facts. We disagree.

La Near I laid out the legal standard applicable to this case. This Court stated that "a deed takes effect and is effective to transfer title at the time of its delivery from grantor to grantee, not at the time of its execution or recordation." La Near I, 364 S.W.3d at 240. Thus, regardless of when the various documents here were recorded, Warren took title to the Property upon delivery of the warranty deed, but it was unclear whether that delivery took place prior to the delivery of the quitclaim deed. Id. at 241.

After hearing evidence related to escrow closings, the trial court found that the process of escrow effectively creates a lapse in time between execution of deeds and delivery. This is because the process allows the seller and buyer to appear at different times to execute their respective obligations and tender their respective consideration under the real estate contract, all facilitated by an escrow agent, who holds each party's respective contributions until all conditions to the closing are satisfied. Once the escrow agent collects each executed document and each party's consideration for the transaction, including all of the necessary authorizations by lenders financing the buyer, the escrow agent "breaks escrow" and simultaneously delivers all respective documentation to the

6

seller and buyer and disburses the funds to the parties entitled to them. The trial court specifically found that "[a]s agent for the [s]eller, the escrow agent holds the deed, executed by the [s]eller, until payment is received from the [b]uyer." The trial court further found that Warren's delivery of the quitclaim deed to La Near took place prior to the breaking of escrow in this case.

Given the undisputed facts occurring on the day of June 30, 2004, we find the trial court appropriately concluded that La Near's interest in the Property was not superior to Respondents' interest. Though the sellers had turned over the general warranty deed to the Agent in the morning of June 30, 2004, Warren had yet to tender his payment for the Property to the Agent. The record reflects that the sellers' intent was to deliver the general warranty deed only upon the condition that Warren paid the agreed-upon purchase price. Thus, the sellers' delivery of the general warranty deed to the Agent was a conditional delivery in escrow, for future delivery to Warren upon his delivery of payment. See Turner v. Mallernee, 640 S.W.2d 517, 522 (Mo. App. S.D. 1982) (citing Tiffany, REAL PROPERTY, 3d ed., Vol. IV, §§ 1048-54) (describing escrow process).

The only way Warren could tender his payment was by executing promissory notes and deeds of trust to Respondents in order to complete the real estate loan. Until Warren completed this process, escrow had not yet broken, and Warren had not received delivery of the general warranty deed. Thus, he had no interest in the Property to transfer to La Near when he executed the quitclaim deed.[1]

Later in the day, when the Agent broke escrow and released payment and the general warranty deed, the only interests in the Property at that point were those of

---

[1] La Near argues that her payment of $19,000 at the closing in exchange for the quitclaim deed secured her interest in the Property, but this does not change the fact that at the time Warren executed and delivered the quitclaim deed to La Near, he did not yet have any interest in the Property to transfer.

7

Warren (through the general warranty deed) and Respondents (through the deeds of trust). These interests were simultaneously created by the breaking of escrow here. Because Warren attempted to deliver title to La Near before he had himself acquired it, that delivery was ineffective until the time that Warren acquired title to the Property. See Estate of Herbert v. Herbert, 152 S.W.3d 340, 348 (Mo. App. W.D. 2004) ("[A]s a matter of general property law, one who does not hold title to property . . . cannot pass or transfer title to that property"). Once Warren did acquire title to the Property, it was encumbered by the deeds of trust that were simultaneously delivered by the Agent with the general warranty deed.

As neither party appeals the trial court's finding that title to the Property is currently vested in La Near, we do not discuss it, other than to note that she could not have acquired title to the Property unencumbered by the deeds of trust, because Warren's title to the Property was at all times so encumbered. Thus, the trial court did not err in concluding that title to the Property is still encumbered by the deeds of trust, and those deeds of trust are now prior to La Near's interest in the Property. Point denied.

### Conclusion

The trial court's judgment that La Near's interest in the Property is subject to the deeds of trust held by Respondents was supported by substantial evidence, was not against the weight of the evidence, and did not erroneously declare or apply the law. We affirm.

Gary M. Gaertner, Jr., Judge

Philip M. Hess, P. J., concurs.
Angela T. Quigless, J., concurs.

8